UNITED STATES, Appellee

v

JAMES G. DYCHE, Basic Airman, U. S. Air Force, Appellant

8 USCMA 430, 24 CMR 240

No. 9430

Decided November 22, 1957

*Captain Norman J. Nelson* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Stanley S. Butt* and *Lieutenant Colonel Ellis L. Gottlieb.*

*Captain Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

### Opinion of the Court

HOMER FERGUSON, Judge:

A board of review in the office of The Judge Advocate General of the Air Force affirmed the accused's conviction by general court-martial of two offenses of forgery in violation of Article 123, Uniform Code of Military Justice, 10 USC § 923, two offenses of larceny in violation of Article 121, supra, 10 USC § 921, an offense of attempted larceny in violation of Article 80, supra, 10 USC § 880, and an offense of escape from confinement in violation of Article 95, supra, 10 USC § 895. We

granted the accused's petition for review limiting briefs and arguments to the following issues:

1. Whether accused was prejudiced by the participation of Lieutenant Applegate as member of the court.

2. Whether the deposition of Chris Stolfa (Exhibit 6) was admissible.

I

Several weeks prior to trial, the accused's individual civilian defense counsel addressed the following letter to the Commanding Officer, Chanute Air Force Base, Illinois:

"May 3, 1956

．　．　．　．　．　．

"Dear Sir:

Enclosed are two copies of Motion for Release from Confinement.

Would appreciate your favorable consideration of this request and also prompt notification of your disposition.

Yours truly,

/s/ Robert E. Turnbow
Robert E. Turnbow"

The "motion" enclosed requested the accused's release from confinement on the grounds that no date had been set for the trial; that it was necessary that the accused be released in order to properly prepare his defense; and that the accused was being illegally confined "in that the Uniform Code of Military Justice makes no provision for a person placed in confinement pending trial to put up bail, which is a violation of a person's constitutional rights as set forth in the Eighth Amendment to the United States Constitution."

On May 10, 1956, the following reply was sent to counsel:

"Dear Mr. Turnbow:

The case of Basic Airman James G. Dyche, AF 17 409 605, 3360th Student Squadron, Chanute Air Force Base, Illinois, has been carefully reviewed, and it has been determined that his confinement pending trial is in the best interest of the Air Force and the United States.

You may confer with Airman Dyche at any reasonable time that you may desire.

Sincerely,

F. L. APPLEGATE
1st Lt, USAF
Adjutant"

One of the members appointed by Special Order Number 119, Chanute Air Force Base, Illinois, dated June 19, 1956, was First Lieutenant Francis L. Applegate. The accused now claims that he was prejudiced by Lieutenant Applegate's participation as a member of the court. He reaches this conclusion by reasoning that the court member, by virtue of the information contained in the letter, acted as investigating officer within the purview of paragraph 64,[1] Manual for Courts-Martial, United States, 1951, which constitutes a ground for challenge under paragraph 62f(5), Manual, supra.[2]

---

[1] "64. INVESTIGATING OFFICER. —Within the meaning of the fifth clause of 62f and Articles 25d (2), 26a, 27a, the term 'investigating officer,' as applied to a particular offense, shall be understood to include a person who, under the provisions of 34 and Article 32, has investigated that offense or a closely related offense alleged to have been committed by the accused. *The term also includes any other person who, as counsel for, or a member of, a court of inquiry, or as an investigating officer or otherwise, has conducted a personal investigation of a general matter involving the particular offense;* however, it does not include a person who, in the performance of his duties as counsel, has conducted an investigation of a particular offense or a closely related offense with a view to prosecuting or defending it before a court martial. But see 6a and 62f (6)." [Emphasis supplied.]

[2] "62. CHALLENGES.—

．　．　．　．　．

"f. Challenges for cause—grounds for.—Among the grounds for challenges for cause against members of special and general courts-martial and (unless otherwise indicated by the context) the law officer of a general court-martial are the following:

．　．　．　．　．

432

We must reject the accused's contention under the circumstances of this case. Any objection to the court member's prior activities must have been known to individual counsel. We have repeatedly held that a challenge to a court member which is based on facts known prior to the conclusion of a trial "must be made at that time or it will be considered waived. A failure to act at that time, if the ground of objection is known, or by the exercise of ordinary diligence, might have been determined, constitutes a waiver of the objection." United States v Thomas, 3 USCMA 161, 11 CMR 161; see also United States v Glaze, 3 USCMA 168, 11 CMR 168; United States v Beer, 6 USCMA 180, 19 CMR 306; United States v Hurt, 8 USCMA 224, 24 CMR 34. We can only conclude that in the instant case counsel knew of the member's prior participation. This conclusion is strengthened by the fact that on voir dire examination, Lieutenant Applegate was interrogated at length by counsel and no challenge for cause was interposed. The peremptory challenge, however, was exercised against another member. The very fact that objection to the member's participation was not made below suggests that no prejudice was caused by the claimed ineligibility and none, in fact, was shown. In the recent case of United States v Wolfe, 8 USCMA 247, 24 CMR 57, we held that an accused could not complain of unauthorized conduct on the part of court members where the defense counsel deliberately withheld information of such misconduct until the case was completed and the findings and sentence delivered. In our opinion we said:

"A criminal trial is not a guessing game. An accused, alike with the Government, must deal fairly with the court. He cannot withhold information of matters affecting the trial on the chance that they may have a favorable effect, and then, when disappointed, complain. Even rights guaranteed by the Constitution are considered surrendered when the ac-

cused knowingly declines at the trial to avail himself of them. United States v Holton, 227 F2d 886 (CA 7th Cir) (1955), cert den 350 US 1006, 100 L ed 868, 76 S Ct 650; United States v Fisher, 4 USCMA 152, 15 CMR 152. We referred to this rule in United States v Walters, 4 USCMA 617, 628, 16 CMR 191, in the following language:

'. . . Certainly we do not propose to permit defense counsel to remain silent and to speculate cunningly as to a court's findings, if he has knowledge of facts suggesting that the court engaged in "proceedings" during a purported recess or adjournment.'

"Here, defense counsel knew of the improper conduct by the court members before the final arguments and the instructions, and before the findings and the sentence. Nevertheless, he remained silent. It may be that he believed the view would benefit the defense. Some support for this possibility appears from the fact that he did not move for appropriate relief, even after he brought out the matter. Whatever the reason for keeping silent, it cannot be denied that defense counsel knowingly and deliberately withheld disclosure of the view until the case was completed and the findings and the sentence were determined. Such conduct strikes us as more than uninformed acquiescence in an unauthorized proceeding. It strongly indicates a calculated determination to say and to do nothing until the final result of the trial became known, and then only if it was unfavorable to the accused. Under such circumstances, the accused cannot now claim that he was prejudiced by the unauthorized conduct of the court members. United States v Hurt, 8 USCMA 224, 24 CMR 34; United States v Thomas, 3 USCMA 161, 11 CMR 161; United States v Smith, 2 USCMA 440, 9 CMR 70. Nor can he now contend that the court members were disqualified to continue as such because

(5) That he was the investigating officer as to any offense charged.

See 64 for definition of investigating officer."

of the personal knowledge obtained at the view. See Ryan v United States, 191 F2d 779 (CA DC Cir) (1951)."

We conclude, therefore, that under the circumstances the accused was not prejudiced by the participation of Lieutenant Applegate as a member of the court.

## II

This leaves for consideration the question concerning the admissibility of the deposition of Chris Stolfa, who is identified as the "Deputy Chief Savings and Loan Examiner," Office of the Auditor of Public Accounts. The convening authority's authorization for taking the deposition gave the deponent's address as "Capitol Building; Springfield, Ill. and/or 188 W. Randolph St, Chicago, Ill." The deposition indicated that it had been taken in the City of Chicago. In answer to the first interrogatory of the deposition the deponent gave as his residence "405 W. Locust St Bloomington, Ill." The defense counsel objected to the deposition's admission into evidence on the ground that it showed on its face that the deponent resided in Bloomington, Illinois, which is within 50 miles of Chanute Air Force Base. The law officer, however, admitted the deposition into evidence on the ground that the controlling geographical location was Chicago. He requested the court take judicial notice of the provisions of Air Force Manual 173–35, Transportation and Travel—Official Table of Distances, December 15, 1954, which indicated that both Chicago and Springfield were in excess of 100 miles from the place of trial—Chanute Air Force Base, Illinois.

The information contained in the deposition was relevant to the two specifications of larceny. Specification 1, Charge II, alleged that the accused had stolen $17.00, the property of the First National Bank, Ithaca, New York. The prosecution presented evidence by way of a deposition from the cashier of the Ithaca bank that a person possessing an Air Force Identification Card bearing the name of "James G. Dyche" presented a check in the amount of $17.00

434 ·

drawn on the "Capitol City Savings and Loan, Springfield, Illinois." The check was made payable to the Ithaca bank and the accused signed as drawer. Before cashing the check, the cashier satisfied himself that the picture and signature on the Identification Card were the same as that of the person presenting the check. The check was subsequently returned to the bank with the notation, "No Record of Association, Individual or Address."

Specification 2, Charge II, alleged that on July 25, 1955, the accused had stolen $4.00, the property of Mayer's Smoke Shop, Ithaca, New York. The evidence presented under this specification showed that a person had entered the shop and had identified himself by means of an Air Force Identification Card and had requested that the manager of the store cash a check for him. The check was drawn upon the "Capitol Savings and Loan" of Chicago, Illinois, and named the shop as payee and the accused as drawer. The check was processed through ordinary banking channels and returned because drawn "on a non-existent bank."

The deponent of the questioned deposition identified himself as the official custodian of the records showing the existence of savings and loan associations in the State of Illinois. The checks which were cashed in Ithaca were drawn on nonexisting banking institutions. The issue before us is the admissibility of the deposition. The foundation for admissibility is set forth in Article 49, Uniform Code of Military Justice, 10 USC § 849, which states that:

"Art. 49. Depositions

(d) A duly authenticated deposition taken upon reasonable notice to the other parties, so far as otherwise admissible under the rules of evidence, may be read in evidence before any military court or commission in any case not capital, or in any proceeding before a court of inquiry or military board, if it appears—

(1) that the witness resides or is beyond the State, Territory, Commonwealth, or District of Columbia

in which the court, commission, or board is ordered to sit, or beyond 100 miles from the place of trial or hearing; . . ."

The Government contends that the test for determining the admissibility of a deposition is the location of the deponent at the time of trial. It is urged that a properly taken and authenticated deposition is admissible in evidence if the deponent resides more than 100 miles from the place of trial or is beyond 100 miles from the place of trial without regard to his residence at the time of trial. From this premise it is argued that inasmuch as the deposition was taken in Chicago two days prior to trial a presumption arises that such condition continued for a reasonable time thereafter. Paragraph 138a, Manual, supra.[3]

It is also urged in the alternative that since the distance from Bloomington to Chicago is in excess of 100 miles, it is unlikely that the deponent was a daily commuter and, therefore, he must have had a temporary residence in Chicago, which is geographically located more than 100 miles from the place of trial. The appellant, however, insists that regardless of the question of "residence" or "location" the deposition was inadmissible because the prosecution had failed to show that the deponent was unavailable as a witness at trial.

We believe the appellant's contention is correct in that the Government has failed to show Stolfa's unavailability as a witness. On June 6, 1956, the convening authority ordered the taking of the deposition at which time it was believed the deponent resided in either Springfield or Chicago, each more than 100 miles from the place of trial. On June 19, 1956, the deposition was taken in Chicago. In the very first interrogatory the deponent stated that he resided in Bloomington,

which is within 100 miles of the place of trial. The trial itself was held on June 21, 1956. Other than these facts no evidence was adduced showing the deponent's whereabouts on the day of trial.

In United States v Miller, 7 USCMA 23, 21 CMR 149, it was noted that the use of depositions is "a substitute method for presenting facts to the detriment of the accused." In that case, in order to establish the necessary foundation for the admission of a deposition into evidence, the trial counsel had testified that on the evening before trial he had made two unsuccessful telephone calls to East Orange, New Jersey, the home town of the deponent prior to his entry into the service. It was shown by other evidence, however, that Cambridge, Virginia, was the place the deponent had stated he intended to live upon his separation from the service. A copy of the order directing his discharge was introduced showing the East Orange address as the point to which he was given travel pay. The New Jersey address was within 100 miles of the place of trial, whereas the Virginia address was not. In holding the deposition inadmissible in evidence we said:

". . . to render the deposition admissible at trial, it was incumbent upon the Government to establish that Corporal Hicks was unavailable as a witness. There was no affirmative showing which would establish any of the statutory grounds such as illness, infirmity, military necessity or the like. . . . At best, the only ground which has any support in the record is that his whereabouts were unknown. However, when that is the base offered to support the admission, trial counsel must establish that diligent, timely, and thorough efforts were made to locate him. Mere failure to locate the witness is not sufficient."

[3] "A condition shown to have existed at one time may be presumed to have continued. Thus it may be presumed that the residence of a person remains unchanged; for instance, it may be presumed that at the time of trial a deponent continued to reside at the place where he resided at the time his deposition was taken."

In United States v Valli, 7 USCMA 60, 21 CMR 186, the Court "appreciated" the fact that depositions for the most part "are tools for the prosecution which cut deeply into the privileges of an accused" and we demanded strict compliance with the procedural requirements before permitting their use. In United States v Ciarletta, 7 USCMA 606, 23 CMR 70, the accused's trial was held in California. A deposition was admitted in evidence following a showing that the deponent had been released from active duty from the Marine Corps some two weeks prior to trial. Service records indicated that he had been assigned to a Reserve Unit in the New York City area. He had enlisted in New York and when released was paid mileage to that city. We held under those facts the evidence was sufficient to support a determination that at the time of trial the deponent was outside of the state or more than 100 miles from place of trial. In answer to the accused's contention that the prosecution had failed to prove that the deponent was in New York at the time of trial, we said that the deponent's precise whereabouts the day of trial need not be shown by the prosecution, for under Article 49d(1) of the Code, supra, "proof of his residence, if it is the requisite distance away, is sufficient to render the deposition admissible." In the instant case, although it was not incumbent upon the prosecution to show that the deponent was in Chicago at the time of trial, it was necessary to show that he was, in fact, unavailable. There is no more reason to presume that the deponent was in Chicago at the time of trial than there is to presume that he was in Springfield or in Bloomington, which was his residence. Accordingly, we conclude that the deposition was inadmissible because of the failure to show the deponent's unavailability.

Although it was error to have admitted the deposition in evidence, we are unable to see how the accused was prejudiced. The prosecution's evidence had shown that two checks had been passed in Ithaca, New York, both of which had been deposited in normal banking channels and subsequently returned as worthless. In addition to this evidence, the accused's pretrial statement was also before the court. In this statement, the accused admitted that while absent without authority in Ithaca, he had "cashed two worthless checks one for $17.00 and the other one for $4.00." The inadmissible deposition merely explained the fact that the checks were worthless because drawn on banks which were nonexistent. Under these circumstances reversal is not required. The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.