UNITED STATES, Appellee

v

ELMER L. SCHMIDT, JR., Private, U. S. Marine Corps, Appellant

16 USCMA 200, 36 CMR 356

No. 19,096

April 22, 1966

*Major Brian B. Kent,* USMC, argued the cause for Appellant, Accused.
*Major Paul F. Henderson, Jr.,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

QUINN, Chief Judge:

The accused contends his conviction by a general court-martial at Camp Courtney, Okinawa, for numerous offenses in violation of the Uniform Code of Military Justice, is invalid because the court-martial lacked jurisdiction to proceed, and his challenge of several court members for cause was determined by improper means.

Before the court-martial was formally convened, defense counsel examined the court members. He established that four of the seven members had read an article in the morning newspaper about a court-martial held the previous day. In response to a question by the law officer, each indicated he would not be influenced "in any way" by the article. Nevertheless, defense counsel asked for, and was granted, an out-of-court hearing. At the hearing, he had admitted in evidence an article from an Okinawan newspaper called the Morning Star. The article was captioned, *"CAMP COURTNEY TRIAL* 'Born Loser' Gets 7-Year Prison Term." The text described the trial of Private Gerald W. Caudill on numerous charges in violation of the Uniform Code of Military Justice, including burglaries and cashing forged checks. According to the article, the accused was Caudill's alleged accomplice, and the " 'brains' " of a "two-man syndicate" of crime. It was reported that Caudill had testified he was "persuaded" by the accused to commit some of the offenses. It was also reported that Caudill had faced a prison term of thirty-six years but was actually sentenced to seven years at hard labor, forfeiture of all pay and

**201**

allowances, and a dishonorable discharge.

Defense counsel contended the article was "inflammatory." Since four of the court members had read it, he asked for a change of venue. The motion was denied. Defense counsel then requested leave to examine, in an out-of-court hearing, each member of the court who had read the article. This request was granted; and the four members were questioned individually by defense counsel out of the presence of the other court members. Each of the four indicated he would decide the accused's case on its own merits, without regard to what he had read about Caudill and the accused in the newspaper article.

When the out-of-court hearing was concluded and the court-martial reconvened, defense counsel challenged all four members on the ground that, as a result of reading the article in the Morning Star, they could not serve "fairly and impartially." He did not voir dire them again. Instead, the law officer advised the unchallenged court members that defense counsel had interrogated the four in the out-of-court hearing, and that each had indicated "he did not feel" the newspaper article would in any way affect his "deliberation on the finding and sentence in this case." Without objection by counsel for either party, the law officer directed that the challenged members not be present when the vote on the defense challenge was taken. As a result only the three members who had not read the newspaper article, and who had not been challenged, voted. They did not sustain the challenge. The accused then peremptorily challenged the senior member, who was one of the four previously challenged for cause, and he was excused. Thereafter, the trial proceeded in regular course.

The accused entered a plea of guilty to all the charges, and the court-martial returned findings of guilty on the plea. During the sentence proceedings, the accused testified in his own behalf. He admitted he participated in many of the offenses with Private Caudill, but denied he was the " 'mastermind.' " After appropriate instructions, the court-

martial sentenced him to a dishonorable discharge, total forfeitures, and confinement at hard labor for five years. On the initial review, the convening authority changed the dishonorable discharge to a bad-conduct discharge, and reduced the period of confinement from five years to three years to conform the sentence to the terms of a pretrial agreement with the accused.

Article 16(1) of the Uniform Code, 10 USC § 816, provides that a general court-martial shall consist of a law officer and "not less than five" court members. The court-martial before which the accused was arraigned, and which convicted and sentenced him, consisted of a law officer and six members. On the face of the record, therefore, the court-martial was properly constituted. However, the accused contends the court-martial lacked jurisdiction to proceed to findings because only three members of the court-martial voted on his challenge of the other court members. Although not expressly articulated, the argument implies that the mere challenge of a court member either terminates his membership on the court-martial instantaneously, or that a minimum of five members must participate in the vote on a challenge for cause. Neither aspect of the argument has merit.

Challenging a court member's qualification to sit in a particular case does not automatically terminate his membership on the court. Some grounds of challenge, such as previous service in the same case as investigating officer, have been described as "self-operating," in that they require the member be excused forthwith on disclosure of the ground of disqualification. Manual for Courts-Martial, United States, 1951, paragraph 62c; United States v Bound, 1 USCMA 224, 230, 2 CMR 130. Other grounds of challenge may require extensive examination of the allegedly disqualified court member and a vote by the other court members to sustain or overrule the challenge. See Manual for Courts-Martial, supra, paragraph 62h(2). Whatever the basis of the challenge, however, it merely results in

excusing the challenged member from further participation in the particular case. A member excused because of challenge in one case may be fully qualified and eligible to sit in a different case.

Colonel Winthrop, in his authoritative work on the military practice before the Uniform Code of Military Justice, discusses the effect of a challenge. He observes that a "member does not cease to be a member because of being challenged." Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 212. The same concept of continued membership after challenge in a particular case is implicit in the provisions of Article 29(a), Uniform Code, supra, 10 USC § 829. The Article prohibits the absence or excuse of a member after the arraignment, except for "physical disability or as a result of a challenge or by order of the convening authority for good cause." Nothing in the Article suggests that the *excuse* of a member for any of the reasons specified removes him as a member of the court-martial. Similarly, the discussion of the challenge proceedings in the Manual for Courts-Martial indicates that the excuse of a member in one case does not excuse him from sitting in all other cases that may thereafter come before the court-martial. *Id.*, paragraph 41. It is plain, therefore, that the mere fact of challenge does not operate as an excuse of the member and does not, by itself, reduce the number of court members present.

Turning to the second aspect of the jurisdictional argument, the question is whether less than five ▮▮▮▮▮▮▮ members may consider a challenge to a member of a general court-martial. The answer depends upon the meaning of Article 29(b), Uniform Code, supra, which, in pertinent part, provides as follows: "Whenever a general court-martial is reduced below five members, the trial may not proceed unless the convening authority details new members sufficient in number to provide not less than five members." We have already noted that a "self-operating" challenge results in immediate excuse of the member.

In view of the short interval of time between disclosure of the ground of challenge and excuse of the court member, it can perhaps be said, in a very loose sense, that the challenge reduces the membership of the court. Until actually excused, a challenged member must be counted as present for the purpose of determining whether sufficient court members are present to continue with the proceedings. See Manual for Courts-Martial, supra, paragraph 62c.

The power to continue with a particular aspect of the trial must be distinguished from the persons who may participate in the proceedings. For example, although the general court-martial is composed of a law officer and at least five court members, the law officer alone may conduct a hearing dealing with the providence of the accused's plea or with the admissibility of certain evidence; such a hearing is held outside the presence of the court members. See United States v Robinson, 13 USCMA 674, 680, 33 CMR 206; United States v Dicario, 8 USCMA 353, 24 CMR 163. So far as the challenge proceeding is concerned, the challenged member is not present at the voting by the other members, but the fact that he temporarily stands aside does not divest the court-martial of the power to proceed, within the meaning of Article 29(b). Unless, and until, the challenge is sustained and the member excused, the membership of the court-martial is not reduced. At all times, therefore, the court-martial in this case was composed of a sufficient number of members to allow it to proceed with the trial.

Moving from the jurisdictional contentions, the accused maintains that errors in the challenge procedure were prejudicial to him. The first allegation is that the court-martial received, and determined, the challenge to four court members at the same time, whereas Article 41(a) of the Uniform Code, supra, 10 USC § 841, requires that it not "receive a challenge to more than one person at a time."

As early as United States v Adamiak, 4 USCMA 412, 15 CMR 412, we com-

mented on the cumbersome and undesirable procedure by ▮ which the challenge of a court member is determined by the other court members. Over the years, under the provisions of Article 67(g), Code, supra, 10 USC § 867, we have recommended to Congress legislation to conform the military practice to the civilian practice by having the law officer rather than the court members pass upon challenges. Annual Reports of the United States Court of Military Appeals and The Judge Advocates General of the Armed Forces and the General Counsel of the Department of the Treasury, 1960, page 11, and 1964, pages 2 and 21. We have also re-iterated our comments and recommendations in a number of opinions. See United States v Cleveland, 15 USCMA 213, 215, 35 CMR 185. However, as burdensome and difficult as the present procedure may be, it is still prescribed by the Uniform Code. Consequently, the failure to follow the prescribed procedure is error. *Cleveland*, supra.

Error without a fair risk of prejudice is not ground for reversal of an otherwise proper conviction. In the area of challenge, we have held that reversal was not required where the law officer, rather than the court members, ruled on a defense challenge for cause, but the ruling was subject to objection by any court member, and no objection was made. United States v Jones, 7 USCMA 283, 22 CMR 73. See also United States v Stewart, 2 USCMA 78, 6 CMR 78. Since the accused entered a plea of guilty to all charges, there is no risk that the procedure by which the challenge was determined could possibly prejudice him. It is well-settled that a plea of guilty con- ▮ stitutes a waiver of irregularities of procedure antecedent to the plea. United States v Mickel, 9 USCMA 324, 26 CMR 104.

Left for consideration is the accused's contention that it was illegal and prejudicial for the court-martial to consider his challenge without hearing any of the evidence as to the contents of the newspaper article. A number of different answers can be made to the contention.

The Government, for example, points out that the accused's plea of guilty eliminated any basis for prejudice as to the findings of guilty. United States v McBride, 6 USCMA 430, 20 CMR 146; and a comparison of the accused's sentence with Caudill's compellingly demonstrates that the newspaper account of the latter's trial and punishment did not influence the court members to the accused's detriment as to the sentence. The most complete answer is that the court-martial did have sufficient evidence upon which to predicate an informed decision to overrule the challenge.

Earlier, we pointed out that the details of the newspaper article were disclosed only in the out-of-court hearing. Appellate defense counsel contend that the law officer "prevented" these details from coming before the court members voting on the challenge. The record of trial does not support the contention. The out-of-court hearing was requested by defense counsel, not initiated by the law officer on his own motion; and the only issue actually tendered to the law officer in the out-of-court hearing was the motion for a change of venue, not a challenge of the court members. In any event, even considering the contention on its own terms, the law officer's action was legally correct and factually sufficient.

Although he does not rule on a challenge, the law officer can hold a preliminary out-of-court ▮ hearing to inquire into ▮ the factual circumstances. United States v Talbott, 12 USCMA 446, 31 CMR 32, footnote 1, pages 449–450. Such a hearing can guard against the inadvertent disclosure of improper matter to the members who will vote on the challenge. See United States v Rogers, 11 USCMA 669, 29 CMR 485. If an out-of-court hearing is held, and defense counsel indicates he intends to challenge a court member on the basis of the evidence presented therein, all the evidence need not be re-presented to the court-martial when proceedings are resumed in open court. Only the essential facts bearing on the alleged disqualification should be disclosed, and all irrelevant circumstances

which might improperly influence the other members of the court-martial must be kept from them. *Rogers, supra;* United States v Washington, 8 USCMA 588, 25 CMR 92. Consequently, the court members were not required to be familiar with all the evidence introduced in the out-of-court hearing. It was, therefore, appropriate for the law officer to supplement defense counsel's statement of the ground of challenge with a recital of the pertinent evidence.

Defense counsel's *voir dire* of all the court members previous to the out-of-court hearing and the ■ law officer's statement of the substance of the evidence adduced at the hearing, established clearly that the basis for the challenge was that the court members had read an article in the morning newspaper about another court-martial trial the previous day. They were also informed by defense counsel that the case was a "companion case" to the accused's. They were advised by the law officer, and heard each challenged member say "he did not feel" that anything in the newspaper article would affect his deliberation on the findings and sentence in this case. Since defense counsel presented the challenge he was perhaps the best judge of the sufficiency of the law officer's statement as to the supporting evidence. He made no objection to the statement and offered no additions to it. Neither did he request further examination of the individual members. It is also noteworthy that no item of evidence adduced in the out-of-court hearing has been urged upon us as being essential to a proper determination of the challenge. The record of trial indicates that the law officer did not prevent defense counsel from presenting any evidence he desired to support his challenge. It also demonstrates that his statement of the factual basis of the challenge was not so deficient as to render meaningless the court-martial's vote thereon.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

It is quite true challenging a member does not serve to remove him from the court-martial until the challenge is sustained. Hence, generally speaking, jurisdiction, as based upon the number of members present at the trial, is still in the court. However, a challenged member is expressly forbidden to be present or participate in the voting on his own challenge. Manual for Courts-Martial, United States, 1951, paragraph 62h(3). Insofar as the challenge is concerned, therefore, the court is reduced in membership by his absence, and he cannot be counted in determining whether a quorum is present to carry on the business at hand. Congress has expressly declared that such a quorum, in a general court-martial, shall consist of "not less than five members." Uniform Code of Military Justice, Article 16, 10 USC § 816. It has also provided that, "Whenever a general court-martial is reduced below five members, the trial may not proceed unless the convening authority details new members sufficient in number to provide not less than five members." Code, supra, Article 29, 10 USC § 829.

It is clear to me the challenging process is a part of the trial as that term is used in Code, supra, Article 29, and that, unless five members are present to vote and deliberate on the challenge leveled against another member, their action is a nullity. Hence, in fact, under such conditions, the challenge has not been disposed of. I am aware of the provision of the Manual, supra, which declares that the four remaining members of a court-martial may dispose of a challenge for cause made against the fifth. Manual, supra, paragraph 62h(3). But the statute sets the quorum for a general court-martial at "not less than five members." Code, supra, Article 16. It further provides that unless five members remain to participate, the trial "may not proceed." Code, supra, Article 29. In light of these provisions, it is obvious to me the Manual rule is in derogation of the Code and, as such, has no validity.

United States v Smith, 13 USCMA 105, 32 CMR 105.

Following these views, I am constrained to conclude the purported action of the three members on this court-martial in determining the challenge leveled against the other four was a complete nullity. At the same time, however, more than five members remained on the court to reach findings of guilty and adjudge a sentence against the accused, after the purported challenging process was completed. Hence, despite the challenging matter, there was, as the Chief Judge notes, no *jurisdictional* error here.

In like manner, it was a specific violation of the Code for the court to receive and determine challenges against all four challenged members at one time. Code, supra, Article 41, 10 USC § 841, provides that the court "may not receive a challenge to more than one person at a time." See also United States v Adamiak, 4 USCMA 412, 15 CMR 412.

Finally, I have never understood our cases as prohibiting counsel from presenting the full evidence underlying a challenge for cause to the members of the court-martial who are expected to vote thereon. In United States v Richard, 7 USCMA 46, 21 CMR 172, we did point out that, normally, only the ultimate ground of challenge should be revealed by a member in the presence of the other court members. But, as we stated in United States v Talbott, 12 USCMA 446, 31 CMR 32, at page 449:

". . . Our comment was made, however, with respect to the perversion of compulsory disclosure of prior, disqualifying knowledge into 'a means of destroying another similar safeguard,' *i.e.*, the integrity of the other court members. United States v Richard, supra, at page 51. At no time did we indicate that counsel or law officer should so far forbear from questioning a possible biased member that the other court members will not be possessed of sufficient information to pass upon his impartiality. All

connected with the trial process should feel entirely free to question the member involved to the extent that they are entirely satisfied of his qualifications. Otherwise, a perversion of the challenging process opposite to that depicted in the *Richard* case will occur, for both parties will lack opportunity to demonstrate the extent of the member's previous connection with the case."

From the foregoing, then, it is obvious I am not in agreement with the manner in which my brothers develop and dispose of the case before us. Nevertheless, I join in their affirmance of the decision of the board of review. I am enabled to do this, basically, for the reason there does not appear to be any real ground for challenge presented in this record. At most, defense counsel demonstrated the members in question had read a newspaper article reporting the trial of the accused's alleged confederate on the preceding day, in which references were made to testimony and argument that Schmidt had been the leader in the charged offenses. All such members specifically denied being influenced in any way by the article and indicated they would try the accused on the evidence presented in court. Under such circumstances, we have uniformly held that a ground for challenge is not made out. United States v Talbott, supra, and cases cited therein. Further, it was defense counsel who sought the interrogation of the allegedly affected members out of the presence of the court and made it clear he did not wish the other members to see the article in question or hear the evidence thereon. Moreover, it was counsel who leveled the challenges together and sought no separate determination of the matter. Finally, the accused pleaded guilty to the charges, and the record indicates such pleas were providently entered. In light of all these matters, he is hardly in a position to claim that prejudice flowed from the several errors committed.

I join in affirming the decision of the board of review.