UNITED STATES, Appellee

v

HARRY E. HOUSTON, JR., Engineman Third Class,
U. S. Coast Guard, Appellant

17 USCMA 280, 38 CMR 78

No. 20,374

November 17, 1967

Lieutenant Commander John B. Lynn, USCG, argued the cause for Appellant, Accused.

Lieutenant David C. Nolan, USCGR, argued the cause for Appellee, United States.

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a special court-martial convened aboard the U. S. Coast Guard vessel STATEN ISLAND charged with the willful disobedience of an order given by a superior officer (Charge I), two specifications of disrespect toward a superior officer (Charge II), use of provoking speech (Charge III), the willful disobedience of an order given by a superior petty officer (Charge IV), and of being drunk and disorderly aboard ship (Charge V), in violation of Articles 90, 89, 117, 91, and 134, Uniform Code of Military Justice, 10 USC §§ 890, 889, 917, 891, and 934, respectively. He pleaded guilty to Charges I, II, III, and V, and to the specifications thereunder. During the course of the trial proceeding, however, the plea to Charge III was changed to one of not guilty. To Charge IV and its single specification, accused pleaded not guilty. He was found guilty of insubordinate conduct, in violation of Article 91, Uniform Code of Military Justice, 10 USC § 891. Of the remainder, Houston was found guilty as charged. He was sentenced to a bad-conduct discharge and two months restriction to the limits of his vessel. The convening authority approved the sentence. The supervisory authority, however, disap-

280

proved and dismissed the findings of guilty as to Charges I and IV, suspending for six months the execution of the bad-conduct discharge with provision for remission. The board of review in the office of the General Counsel, Department of Transportation, then disapproved and dismissed the finding of guilty as to Charge II, affirming the remaining charges and the sentence. On July 28, 1967, the General Counsel of the Department of Transportation certified to this Court the question:

"WAS THE BOARD OF REVIEW CORRECT IN DETERMINING THAT A LAWFUL COURT-MARTIAL WAS CONSTITUTED?"

The crux of this issue is whether a special court-martial is lawfully constituted, when convened by a Coast Guard officer for the trial of a Coast Guard enlisted man, if comprised of one Navy and two Coast Guard members.

Appellant's ship, at times pertinent to this case, was one of three Coast Guard icebreakers in the Ross Sea group of Task Force 43. Popularly known as Operation Deep Freeze, it is said to be a naval support force providing "facilities, materials and services in aid of the United States Antarctic Research Program supervised by the National Science Foundation."

In addition to the STATEN ISLAND's normal complement of Coast Guard officers and men, a Navy helicopter detachment of four officers and twelve enlisted men was assigned aboard during this period.

The charges against Houston were sworn on Februrary 16, 1967, at sea, en route to McMurdo Station, Antarctica. On the day following, a special court-martial was formed with the appointment of three Coast Guard officers. The above charges were referred to this court. One day later, a single court member was relieved with a Navy helicopter officer being appointed in his stead. While aboard ship, then operating in the Southern Ross Sea, accused was tried and convicted by the special court as thus composed.

The board of review approached the court's composition as simply a departure from Manual for Courts-Martial, United States, 1951, rather than Uniform Code of Military Justice provisions, amounting to no more than a nonjurisdictional, nonprejudicial error. Stated briefly, the board of review found the convening authority's appointive action consistent with the formula set forth in Article 25 of the Uniform Code, 10 USC § 825, for there Congress provided that "Any commissioned officer on active duty is eligible to serve on all courts-martial." Appointment of the Navy court member did, however, in the board of review's estimation, violate that portion of paragraph 4g(3), Manual for Courts-Martial, United States, 1951, providing, "In exceptional circumstances, with the concurrence of the Secretaries of the other Departments concerned, the Secretary of a Department may authorize a convening authority responsible to him to appoint personnel of other armed forces to serve on courts-martial in cases not contemplated by the provisions of 4g(2)." It is conceded that in this case Secretarial authorization was not given.

Acknowledging that reciprocal jurisdiction "shall be in accordance with regulations prescribed by the President" (Article 17(a), Uniform Code of Military Justice, 10 USC § 817), the board of review, nevertheless, considered paragraph 4g(3) an expression of that which is "politic and desirable" rather than a regulation having the force of "substantive law." Finalized was the belief that the restrictive nature of such a Manual provision is inconsistent with the unrestricted terms of Article 25 of the Uniform Code, supra. In sum, it was concluded that the court was not "jurisdictionally defective."

Appellate Government counsel adopt a more stringent view by contending that paragraph 4g(3) is not concerned with reciprocal jurdisdiction, hence, is beyond the scope of authority granted in Article 17(a), Uniform Code, supra; that being unrelated to "evidentiary rules or trial procedure," it is beyond the scope of Article 36, Uniform Code of Military Justice, 10 USC § 836, giving the President power to prescribe

such rules; that "regulations" may not be contrary to, or inconsistent with, the Uniform Code; hence, insofar as paragraph 4g(3) purports to limit the eligibility of court members, it is in direct conflict with an unambiguous Code provision, and, therefore, invalid.

Appellate defense counsel, on the other hand, argue that, prior to the Uniform Code, Coast Guardsmen had the right to be tried by a court-martial composed of their own officers in addition to a limited number of Public Health officers. Moreover, the legislative history of the Uniform Code is said to reflect no dilution of such preexisting right without a showing of overriding military necessity. Where the Code has expanded the right to peremptory challenge, it would be incongruous, so argue the defense, to presume that Congress intended to confer upon a commanding officer the power to negate this conferred right by enabling him to appoint court members from another service regardless of officer availability. To the contrary, it is argued that the problems of concurrent jurisdiction and court-martial composition were treated in the legislative history in a manner showing that supplemental regulations were intended to have mandatory adherence.

Independent assessment of these matters confirms our belief that Article 25 of the Uniform Code, and paragraph 4g(3) of the Manual, both supra, are neither inconsistent nor contradictory. "Eligibility" of court members, the concern of Article 25, is clearly set apart from their subsequent "appointment," the subject of paragraph 4g(3). Who is better aware of this distinction than the service officer who has become "eligible," i.e., selected for promotion but who must, nonetheless, await his "appointment."

Neither can we agree that paragraph 4g(3) is beyond the scope of Article 17(a). The latter provides:

"Each armed force has court-martial jurisdiction over all persons subject to this chapter. The exercise of jurisdiction by one armed force over personnel of another armed force shall be in accordance with regulations prescribed by the President."

As Chief Judge Quinn aptly demonstrated in United States v Hooper, 5 USCMA 391, 398, 18 CMR 15, the above Manual provision is one of those regulations "governing the exercise of reciprocal jurisdiction," this being the essence of Article 17(a). Legislative commentary on Article 17(a) as well as Article 25 conform to this rationale. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 613, 1138, 1139; House Report No. 491, 81st Congress, 1st Session, pages 16, 17. It is, of course, a proper and valid delegation. Uniform Code, supra, Article 36; United States v Hooper, supra; United States v Smith, 13 USCMA 105, 32 CMR 105; United States v Acosta-Vargas, 13 USCMA 388, 32 CMR 388.

"Where a Manual provision does not lie outside the scope of the authority of the President, offend against the Uniform Code, conflict with another well-recognized principle of military law, or clash with other Manual provisions, we are duty-bound to accord it full weight." United States v Villasenor, 6 USCMA 3, 7, 19 CMR 129.

The fact that paragraph 4g(1) purports to set out "general policy" is unpersuasive "Classification labels may simplify professional discussion, but they are not substitutes for statutory requirements." United States v Thomas, 17 USCMA 103, 107, 37 CMR 367. United States v Hooper, supra, is not to the contrary, for the focal point of that decision is paragraph 13, Manual for Courts-Martial, supra, on the character of which Chief Judge Quinn reserved judgment.

Unquestioned is the fact that in this case there is no showing of compliance with paragraph 4g(3). In truth, the Operation Order for the Task Force intended that each service with the Force exercise discipline over its own members (Appendix II to Annex B, Task Force 43, Operation Order No. 1–66[1]). We have, then, an improper

[1] "c. Commander Task Force 43 does not exercise disciplinary powers over members of other services within the

and invalid court appointment. The error, reducing court membership below the minimum requirement of three, is jurisdictional in nature and renders the trial and conviction of this accused void. Uniform Code of Military Justice, Article 29(c), 10 USC § 829; McClaughry v Deming, 186 US 49, 46 L ed 1049, 22 S Ct 786 (1902); United States v Brown, 206 US 240, 51 L ed 1046, 27 S Ct 620 (1907).

The certified issue is answered in the negative. The decision of the board of review is reversed and the record of trial is returned to the General Counsel, Department of Transportation, for action not inconsistent with this opinion.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

The Uniform Code of Military Justice, the Manual for Courts-Martial, and the several opinions, including my own, in United States v Hooper, 5 USCMA 391, 18 CMR 15, require affirmance of the decision of the board of review.

From the standpoint of two of the three opinions in the Hooper case, none of the Manual provisions dealing with a difference in armed force between that of the accused and the court-martial is jurisdictional in nature. The import of these opinions is that a failure to comply with any of the Manual provisions regulating the exercise of "reciprocal jurisdiction" does not affect the power of the court to proceed. At best, the failure to adhere to the Manual provides a ground for relief which the accused must assert at trial, if the matter is to be reviewed on appeal. Since there was no objection in this case, as there was not in Hooper, the views of the majority in Hooper require affirmance of this conviction.

Although my brothers do not directly disavow the majority position in Hooper, they appear to favor my interpretation of Article 17(a) of the Uniform Code and the pertinent Manual provisions on reciprocal jurisdiction. In Hooper, I concluded that the Manual provisions regulating trial before a court-martial convened by a commander belonging to an armed force different from that of the accused was jurisdictional. I reached that conclusion on the basis of the specific statutory restriction on the "exercise of jurisdiction" in such a case. No similar restriction is set out in the Uniform Code as regards appointment of a court member serving in an armed force other than the accused's. The portion of the Manual regulations dealing with appointment of court members is, therefore, not part of the statutory scheme of reciprocal jurisdiction. It is, as I shall point out, entirely different in its purpose and effect from the regulations effectuating the statutory restriction set out in Article 17. To place the differences in proper focus, it is appropriate to examine separately Articles 17 (a) and 25(a), Uniform Code of Military Justice, 10 USC §§ 817 and 825, respectively, and the Manual for Courts-Martial provisions pertinent to each.

Article 17(a) provides that "[e]ach armed force has court-martial jurisdiction over all persons" subject to the Uniform Code of Military Justice, but the "exercise of jurisdiction" by one armed force over a member of another armed force "shall be in accordance with regulations prescribed by the President." Hooper considered the meaning of this provision. My interpretation differed from my brothers. I construed the language of the Article in light of the legislative history and previous practice. On the basis of these, I concluded that a court-martial convened by a commander belonging to one armed force could not try an accused who was a member of another armed force, unless the President established regulations to authorize such trial, and the commander complied with the regulations. The Manual for Courts-Martial contained such regulations. They were prescribed in paragraph 13, which was titled "Reciprocal Jurisdiction." I determined the regu-

Task Force. Units of the Army, Air Force and Coast Guard shall process disciplinary cases in accordance with regulations established by their services."

lations had been complied with and, therefore, sustained the exercise of jurisdiction over the accused.

In this case, the accused is a member of the Coast Guard; and the court-martial which tried him was convened by a competent officer of the same armed force. Consequently, the limitations on jurisdiction prescribed by Article 17(a) and paragraph 13 of the Manual are inapplicable.

At issue in this case is whether a court-martial member can belong to an armed force other than that of the accused. The qualifications for appointment as a court member are prescribed in Article 25. The pertinent provision is subsection (a) which provides that any "commissioned officer on active duty is eligible to serve on all courts-martial for the trial of any person who may lawfully be brought before such courts for trial."

Two of the three members of the court-martial were Coast Guard officers on active duty. Manifestly, they satisfied the eligibility requirements of Article 25(a). The third member of the court was Lieutenant (junior grade) Charles E. Russell. The record clearly indicates, and it is not disputed, that he was on active duty in the United States Navy at the time of his appointment. Since nothing in Article 25(a) places any restriction upon the appointment of an eligible officer of an armed force different from that of the accused, as far as the Uniform Code is concerned, he, too, was eligible to serve. The absence of a statutory limitation on appointment makes Article 25(a) significantly different from Article 17 (a). It has led the Government to contend that the President cannot impose restrictions upon the appointment of eligible officers as court members. The majority summarily reject this contention. I agree that it lacks merit.

No extensive discussion is needed to demonstrate the havoc that could result from unrestricted appointment of members of one armed force to serve on courts-martial convened by the commander of another armed force. Unexpected and untimely withdrawal of members of one force for service in another may seriously impede the operations of the former, without substantial advantage to the operations of the latter. It is, therefore, certainly desirable that appointments which cross service lines be subject to some restraint. The Code's silence on this subject does not imply a lack of authority to regulate the selection power. Not every power conferred by the Uniform Code is immune from all restraint by superior authority. United States v Gray, 6 USCMA 615, 20 CMR 331. In my opinion, the President can control the selection of particular persons from the classes made eligible by the Code for membership on courts-martial. Two questions then arise: (1) Has the President imposed conditions upon the selection of an officer serving in an armed force different from the accused; and (2) if conditions are imposed, does the failure to comply with these deprive the court-martial of power to try the accused?

The Manual contains various provisions on the subject of appointment as court members of persons belonging to an armed force different from the accused's. See paragraph 4, Manual for Courts-Martial, United States, 1951. In the Hooper case, it was unnecessary to the appeal to determine whether these provisions are mandatory or permissive in nature. United States v Hooper, supra, at page 402. The text certainly supports a conclusion that it merely defines practical objectives, not mandatory conditions. For example, paragraph 4g refers to a "General policy" in selection. The text, however, cannot properly be considered without reference to the reasons which led to the changes in the Uniform Code of Military Justice. All the opinions in Hooper recognized that circumstance. One of the reasons for loosening the strictures of the past was the need for greater flexibility in prosecution of cases in which the accused belonged to an armed force different from that of the convening authority. In my opinion in Hooper, I observed that the Uniform Code did not effect a total break with the past in the area of trial by a court convened by a commander of a different armed force. Here, we have seen that the Code allows unlimited

selection for court membership of officers in armed forces different from the accused, but there are risks in this liberality of choice. In my opinion, the Manual provisions on selection of court members were intended to control these risks. I agree with the majority, therefore, that these provisions regulate the appointment of eligible persons as court members, and cannot be disregarded as the mere suggestion of an appropriate "policy." Cf. United States v Gomes, 3 USCMA 232, 11 CMR 232. It does not follow from this conclusion, however, that a violation of these precepts makes an otherwise eligible member totally unqualified to sit.

I pointed out earlier that the Uniform Code contains no limitation on the selection of officers belonging to forces different from the accused's. These are spelled out only in the Manual. Since they relate to the member's qualification to sit in a particular case, we would expect that if the Manual assigned "jurisdictional" significance to them they would be delineated with other important grounds for disqualification in the provisions on challenge of court members. A reference to these provisions discloses that the limitations in issue are not specially mentioned. See Manual for Courts-Martial, supra, paragraph 62. It may be fairly inferred, therefore, that the draftsmen of the Manual did not regard the provisions on appointment as "self-operating" disqualifications, which require that the court member be excused forthwith. See United States v Bound, 1 USCMA 224, 230, 2 CMR 130; United States v Schmidt, 16 USCMA 200, 36 CMR 356. Similarly, the apparent purpose of the Manual provisions argues against their nature as requisites for jurisdiction. The prohibitions appear to be calculated more to prevent interference with the operations of the command from which the member is drawn than to preserve to the accused the special benefit that may be thought to result from the fact that he and the court members belong to the same armed force. Cf. United States v Wright, 17 USCMA 110, 113, 37 CMR 374. Although I personally would reject the argument in the context of a court-martial trial, surely the most that can be said against the difference in armed force is that the orientation of a member of one armed force may possibly be adverse to that of a member of a different armed force. See my dissent in United States v Baldwin, 17 USCMA 72, 37 CMR 336. The contention, however, presents nothing more than a claim of possible bias or hostility on the part of a court member whose armed force is different from that of the accused. A biased or hostile court member is subject to challenge, but he is not *ipso facto* ineligible for appointment. If no challenge is interposed at trial, when the facts are fully known and of record, a claim of bias on the part of a court member is not available on appeal as a ground for reversal. United States v Glaze, 3 USCMA 168, 11 CMR 168; United States v Dyche, 8 USCMA 430, 24 CMR 240.

I would answer the certified question in the affirmative, and sustain the decision of the board of review.