**John J. FRANK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Oliver W. ANGELONE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**John W. LEON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 18842–18844.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 22, 1964.

Decided April 22, 1965.

Petition for Rehearing Denied July 30, 1965.

Wilbur K. Miller, Senior Circuit Judge, dissented in part.

See also D.C., 225 F.Supp. 573.

Mr. Walter E. Gillcrist, Washington, D. C., with whom Mr. Edward L. Carey, Washington, D. C., was on the brief, for appellants.

Mr. Gerald E. Gilbert, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Harold J. Sullivan, Asst. U. S. Attys., were on the brief, for appellee. Mr. Robert D. Devlin, Asst. U. S. Atty. at the time

the record was filed, also entered an appearance for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and FAHY and WRIGHT, Circuit Judges.

FAHY, Circuit Judge:

Appellants were charged in a four count indictment, No. 1 charging housebreaking, 22 D.C.Code § 1801, which was dismissed by the court, and Nos. 2, 3 and 4 charging crimes arising from violations of the Federal Communications Act, 48 Stat. 1064 (1934), as amended, 47 U.S.C. §§ 301, 318, 501 and 502 (1958), of which all appellants were found guilty by jury verdicts. Each was sentenced to imprisonment for one year on counts 2 and 3, to run concurrently, and fined $500 on count 4. The violations charged in counts 2, 3 and 4 were (1) the wilful and knowing use and operation of an electronic eavesdropping device, wireless microphone or "bug" for the transmission of energy, communications and signals by radio from one place in the District of Columbia to another without a station license, in violation of 47 U.S.C. § 301; (2) the setting up of a radio station and operating it without an operator's license issued by the Communications Commission, in violation of 47 U.S. C. § 318;[1] (3) the wilful and knowing violation of a rule, regulation or condition of the Commission by operating a low power communication device on a frequency above 70 megacycles without complying with the conditions of 47 C.F. R. § 15.206,[2] in violation of 47 U.S.C. § 502.

The "bug" was discovered under a table in Room 633 of the Mayflower Hotel, where a pending Federal Power Commission proceeding was being discussed by the lawful occupants of the room. A radio receiving set and a tape recorder were discovered two doors away in Room 639, used by appellants. They conceded they had neither an operator's nor a station license. The "bug" had a battery when found and was able to transmit signals by radio. When tested it was found to operate at a frequency above 70 megacycles, exceeded specified field strength limits, and was not equipped automatically to limit its transmission to a duration of one second not more than once in 30 seconds, all in violation of 47 C.F.R. § 15.206, note 2 *supra*.

Assuming for a moment that no material evidence used at the trial should have been excluded as inadmissible, a matter later to be discussed, the evidence supports the guilty verdicts. The "bug" or one like it was traced by several witnesses to appellants Frank and Angelone in the Mayflower Hotel. A maid testified she saw Frank entering Room 633, the door having been opened for him by someone inside, and that she saw both Frank and appellant Leon, neither of whom claimed any right of occupancy or use of that room, come out of Room 633. The direct testimony of an accomplice placed all three appellants in Room 639, which had been reserved by appellant Frank in the name of D. P. Baxter, during the period from March 31, 1962 to April 4, 1962 when the "bugging" allegedly occurred. The accomplice testified that the receiving set and recorder later found in Room 639 were operative during this period and that conversations from Room 633 were being received in Room 639 when all appellants were there. The occupants of Room 633 were alerted

---

1. Both of these violations are made crimes by 47 U.S.C. § 501.

2. 47 C.F.R. § 15.206 (Revised as of January 1, 1958) provides:

"A low power communication device may be operated on any frequency above 70 Mc. provided it complies with all of the following conditions:

"(a) Operation is limited to one second duration and to occur not more than once in 30 seconds.

"(b) The radiated field on any frequency from 70 Mc. to 1000 Mc. does not exceed the limits specified in § 15.62.

"* * *

"(d) The device is provided with means for automatically limiting operation within the time restrictions specified in this section."

that their conversations were heard as being received in Room 639. Private detectives were then employed and the "bug" was discovered in Room 633. Surveillance of Room 639 followed, with ample verification of receipt there of conversations taking place in Room 633.

Appellants were observed entering and leaving Room 639 during the five day period of its occupancy by them. The final departure was on April 4, 1962 when one appellant was seen leaving with a suitcase and an unidentified woman. None returned so far as the evidence indicates.

■ We are satisfied there was such ample evidence of the clandestine use of the "bug" in Room 633 and the receiving apparatus in Room 639 as to constitute a factual issue which the jury was warranted in resolving as proof of appellants' guilt.

They contend, however, that material evidence at the trial, consisting of the receiving and recording apparatus found in Room 639, was obtained by an unlawful search and seizure and, therefore, should have been excluded on their motion filed under Rule 41(e), Fed.R.Crim. P.

The possession of the United States of this equipment came about as now stated. When the "bugging" was discovered the lawful occupants of Room 633 filed a civil action in the District Court. On the same day, April 4, 1962, a Deputy United States Marshal served process on appellant Angelone in Room 639. Shortly thereafter Angelone left this room with a suitcase and there was no evidence that he or any appellant returned or retained any interest in the room. On the evening of April 4 the hotel management placed a security lock on the room after having observed that there was no clothing or other sign of continuing occupancy, though the radio receiver and tape re-corder remained. This entry was made by the assistant manager and the attorney for the plaintiffs in the civil action. The next morning process in that action was served on appellant Leon. The same day, April 5, a hearing was held on his motion to quash the process, at which time his counsel disclaimed any interest in the equipment left in the hotel room. Plaintiffs also obtained an order signed by District Judge Hart impounding the equipment. The hotel management had indicated it considered the room abandoned and wished the equipment removed. The afternoon of the same day a Deputy Marshal entered the room, removed the equipment pursuant to the impounding order and placed it in the Marshal's safe in the United States Courthouse.[3]

■ The entries of April 4 and 5, made with the permission of the hotel management, were not in violation of any right of privacy of appellants. Room 639 was properly considered then as having been abandoned by appellants.[4] Accordingly, seizure of the articles pursuant to the impounding order, even if such seizure could be considered as accumulating evidence of a crime, was not unconstitutional. See Abel v. United States, 362 U.S. 217, 240–241, 80 S.Ct. 683, 4 L.Ed.2d 668.

■ Both the radio receiver and tape recorder were turned over to the grand jury by the Marshal pursuant to subpoenas. Judge Hart had made his impounding order in the civil action subject to the subpoenas. Appellants contend that this permission of the court was granted without notice to defendants in the civil action. They apparently attack on this ground the admission of the articles in evidence at the criminal trial, and they also complain that the impounded receiving set was delivered by the Marshal without court order to the Fed-

---

3. Just prior to the arrival of the Deputy Marshal, officials of the Federal Communications Commission, with the permission of the hotel management, had entered Room 639 to examine the equipment which had been left there.

4. Compare United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59, where the accused retained an interest in the room entered by the hotel management without permission.

eral Communications Commission for examination prior to Judge Hart's order releasing it to the grand jury.[5] We find no basis upon which to rest reversal of the criminal convictions because of the above uses of the equipment and the admission of evidence stemming from such use. If there was error in issuance of the order *ex parte* or in the Marshal making the equipment available to the Commission the error was not of constitutional or such other proportions as to bring into operation the "poisonous tree" doctrine requiring exclusion of the fruit of the error. There was no unlawful search or seizure and no invasion of any personal or property right of appellants calling for exclusion of the evidence.

■ Appellants also contend that the court abused its discretion in refusing to peruse *in camera*, as requested by the defense, the grand jury testimony of a witness for the prosecution. The testimony of this witness was adequately corroborated at trial, and no inconsistencies appeared. While the absence of inconsistencies is not conclusive, since in a proper case the opportunity to test the trial testimony for inconsistencies should be permitted by use of grand jury testimony, this witness' trial testimony was not so critical or fundamental to the prosecution as to give rise to a particularized need that the court examine the minutes. We find no abuse of discretion in the court's refusal of the request that it do so. Compare Gordan v. United States, 112 U.S.App.D.C. 33, 299 F.2d 117 (1962).

A separate and important question is raised on the appeal of Angelone. After his conviction and pending this appeal therefrom he represents that he was subpoenaed to appear before a grand jury in this jurisdiction, that his motion to quash the subpoena was denied, that he refused to answer questions before the grand jury concerning matters involved at his trial, claiming his privilege against self-incrimination, that the United States invoked the immunity statute and thereupon the court ordered him to answer under the provision of the statute, which he did. In its brief before us the United States does not dispute the above, stating,

"After appellant Angelone was tried, convicted and sentenced, he was called upon to testify before a grand jury. The grand jury was investigating other crimes and the crime in the instant case so far as the facts concerned other suspects. Appellant Angelone refused to testify on grounds of self-incrimination. He was compelled to testify under the immunity statute, 47 U.S.C. 409(L)."

Angelone contends that his conviction has been mooted and must be set aside. Assuming the facts to be as above indicated, we agree. But we shall allow the Government, if so advised, opportunity to supplement or clarify the factual situation as it may be thought to bear on the question of mootness.

The immunity statute, 48 Stat. 1097 (1934), 47 U.S.C. § 409(*l*) (1958), provides in pertinent part:

"no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that any individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying."

■ Under this language Angelone may not be "subjected to any penalty * * * for or on account of any trans-

5. The radio receiver thus delivered to F.C.C. officials was not for the purpose of testing but for "an external examination." The F.C.C. officials had previously done some testing with the radio receiver at the hotel after Room 639 had been vacated. But the later testing of the "bug" from Room 633 was apparently performed only with the F.C.C.'s own receiving set.

action, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify * * *." Therefore he may not be penalized in the present case since, as we are now advised, his compelled testimony concerned matters related to his conviction which is here on appeal. The United States points out, however, that the conviction had already occurred, and that the immunity statute does not apply to any penalty that may result from his appealed conviction because such penalty cannot be attributable to his testimony as given before the grand jury. We think this is too narrow a construction of the immunity statute and is inconsistent with the "Policies of the Privilege" as most recently described by the Supreme Court. Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678.

■ While we are not bound to construe literally the language of immunity if to do so would run counter to the intent or purpose of Congress, we have no reason to decide that that intent or purpose was other than to permit an exchange of a particular conviction, such as Angelone's, for the larger benefit believed to reside in compelling his self-accusatory testimony. Congress has not sought to enable the government to obtain both such compelled testimony and a conviction related thereto which is either not yet obtained or if obtained is pending on appeal. Congress left the choice to the executive officials administering the criminal law, subject to District Court approval. Compelling one to give testimony which, except for the grant of immunity, is self-incriminating sacrifices the power to penalize the person granted the immunity if he has been convicted with respect to the matters about which the testimony is compelled and his appeal from the conviction is pending when such testimony is given. It probably will not be questioned that should such a conviction be reversed the intervening immunity would preclude a subsequent re-trial. But if the conviction is affirmed, the appellant is "subjected to * * * penalty" not only by the previous conviction but by the subsequent affirmance.

Our opinion has pointed to no trial error warranting reversal on the merits; and our review of the record for possible trial error has not sought to separate the evidence against Angelone, commingled as it was with that involving the other appellants as to whom it was necessary to decide the merits of the appeal. This treatment of the case does not preclude applying the immunity to Angelone; for the immunity does not depend upon the outcome of his appeal considered apart from the immunity.

■ To repeat, the Government may not convict a person and then, pending his appeal, compel him to give self-accusatory testimony relating to the matters involved in the conviction. Any other construction of the statute would lead to such potential abuse as to preclude such construction if it may reasonably be avoided consistently with the congressional purpose. Our construction and application of the statute we think coincides with that purpose. Piemonte v. United States, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028, is not to the contrary. No appeal from the conviction was there pending. Moreover, the case involved contempt of court for refusing to obey the court's order. No question as to the possible mooting of the previous conviction was presented or decided.

Affirmed as to Frank and Leon. As to Angelone, unless the United States requests an opportunity to present additional evidence to this court on the issue of mootness, the judgment of conviction is set aside with directions to dismiss the indictment.

WILBUR K. MILLER, Senior Circuit Judge, concurs in affirmance of the convictions of appellants Frank and Leon but dissents from the disposition made by the court of the conviction of Angelone, which he would also affirm.