**UNITED STATES of America,
Plaintiff-Appellee,**

v.

·**Jon Joseph KELLY, Defendant-
Appellant.**

No. 72-1028
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 3, 1972.

Percy Foreman, Richard M. DeGuerin, Houston, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Andrew Barr, Dallas, Tex., for plaintiff-appellee.

Before WISDOM, GODBOLD, and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

This appeal is from a judgment of contempt and order of confinement entered January 3, 1972, by the district court under 28 U.S.C. § 1826.[1]    This

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

1. § 1826. *Recalcitrant witnesses*
    (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
    (1) the court proceeding, or
    (2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.
    (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from

Court vacated the judgment by an abbreviated order dated February 3, 1972, but we stated that we would file an opinion at a later date explaining the reasons for our order.[2]

On May 22, 1972, the United States Supreme Court decided Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 and Zicarelli v. New Jersey State Comm. of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L. Ed.2d 234. These decisions overrule this Court's interpretation of the Fifth Amendment privilege against compulsory self-incrimination in immunity cases. Accordingly, we withdraw our order of February 3, 1972, and substitute this opinion and judgment. *See* United States v. Cropper, 5 Cir. 1971, 454 F.2d 215.

On August 19, 1971, a jury found Jon Joseph Kelly guilty on four counts[3] of violating 18 U.S.C. § 2511(1)(a) which prohibits unlawful interception of wire communications. On September 9, 1971, Kelly was sentenced to three years imprisonment. His conviction was affirmed by this Court on June 12, 1972.[4]

On December 6, 1971, the Government subpoenaed Kelly to appear before a federal grand jury on December 9, 1971. Kelly appeared at the appointed hour and was questioned by an Assistant United States Attorney. The grand jury was investigating possible violations of 18 U.S.C. § 2511, and the questions propounded to Kelly concerned the acts which led to Kelly's substantive conviction for violating 18 U.S.C. § 2511(1) (a).[5] Kelly refused to answer, asserting his privilege against self-incrimination.

the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

2. The text of our order reads:
The district court's order of contempt and confinement issued on January 3, 1972, is vacated. The December 13, 1971, order of immunity, as this Court construes it, confers full "transactional" immunity. If the government chooses to call the defendant, it is possible that he may testify. If the defendant, under the protection of the order of immunity, testifies: (1) The August 19, 1971, conviction for violations of 18 U.S.C. § 2511(1) (a) must be vacated and the charges against Kelly dismissed lest he "be . . . subjected to . . . [a] penalty . . . on account of . . . [a] matter . . . concerning which he is . . . compelled to testify". (2) He may not be subjected to retrial for any offense growing out of any transaction about which he testifies. An opinion will follow.

3. The counts alleged that from on or about November 25, 1969, to January 16, 17, 1970 Jon Joseph Kelly and Patrick W. McCann, III, wilfully and unlawfully intercepted wire communications by persons calling to and from telephones lo-

cated at the residences of (1) Paul M. Rothermel, Jr. of Richardson, Texas, (2) John W. Currington of Dallas, Texas, (3) John H. Brown of Dallas, Texas, and (4) George M. Cunyus of Dallas, Texas.

4. United States v. McCann & Kelly, 5 Cir. 1972, 465 F.2d 147.

5. After fully advising Kelly of his constitutional rights, the Assistant United States Attorney asked the following questions:
The first question that I would ask in this regard is, whether or not you had, during November or December, 1969, or January, 1970, any conversation with Pat McCann concerning wire tapping or interception of telephone communications occurring at the residence of Paul Rothermel, John Brown, John Currington or George Cunyus. Then if you did have such conversation, what was said in those conversations. * * * Q Let me ask you this second question. Did you, during November or December, 1969 or January, 1970, observe any act or acts committed by Pat McCann, which relate to the procurement or furtherance of any wire tapping activity at the residence of Paul Rothermel, John Brown, John W. Currington, or George Cunyus? * * Q Let me ask you this one additional question. Do you have any knowledge whatsoever of any wire tapping ac-

On the same day, the Government filed, under 18 U.S.C. § 2514,[6] an "Application for Order Compelling Testimony". On December 13, 1971, after two hearings, the district court issued an order requiring Kelly to answer the Government's questions before the grand jury and granting him immunity.[7] Kelly appeared before the grand jury the same day and again refused to answer questions, asserting his privilege against self-incrimination.

The Government filed with the district court a "Motion to Confine Recalcitrant Witness". On January 3, 1972, the district court pursuant to 28 U.S.C. § 1826 found Kelly in contempt of court and ordered him confined during the term of the grand jury or until he agreed to testify. The district court stayed its own order until January 11, 1972. A notice of appeal was filed on January 4, 1972, and, on January 7, 1972, this Court stayed the district court's order pending appeal.

28 U.S.C. § 1826 requires the Court to decide Kelly's appeal within thirty days. On February 3, 1972, this panel, Judge Godbold dissenting, issued an order announcing its decision.

On appeal, Kelly argued that the district court's order did not grant him full transactional immunity in that it did not preclude the Government from retrying him—in the event of reversal of his substantive conviction. The Government's brief does indicate that the grant of immunity would not necessarily have pro-

---

tivity in November or December, 1969, or January, 1970, at the residence of Paul Rothermel, John H. Brown, John W. Currington and George M. Cunyus?

6. Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against

him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section.
18 U.S.C. § 2514.

7. In pertinent part the district court's order reads:
It is hereby ORDERED that JON JOSEPH KELLY appear forthwith before said Grand Jury, that he answer any and all questions and produce any and all evidence pertinent to the Grand Jury's inquiry into possible violations of Title 18, United States Code, Section 2511, and that he not be excused from testifying or producing evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture;
It is hereby further ORDERED that upon answering any and all questions and producing any and all evidence pertinent to the Grand Jury's inquiry as directed above JON JOSEPH KELLY shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is hereby compelled to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding against him in any court, except he shall not be exempt under this order from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided herein.

tected Kelly from retrial. Kelly contended that a grant of immunity which did not protect him from retrial was in reality only a grant of "use immunity" rather than "transactional immunity", which was required to protect his Fifth Amendment privilege against self-incrimination.[8]

In Kastigar v. United States, *supra*, the Supreme Court granted certiorari to determine "whether the United States Government may compel testimony from an unwilling witness, who invokes the Fifth Amendment privilege against compulsory self-incrimination, by conferring on the witness immunity from use of the compelled testimony in subsequent criminal proceedings, as well as immunity from use of evidence derived from the testimony."[9] 92 S.Ct. 1653. The Supreme Court held:

> We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than

does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being "forced to give testimony leading to the infliction of 'penalties affixed to . . . criminal acts.'" [Ullmann v. United States, 350 U.S. 422, 438–439, 76 S.Ct. 497, 100 L.Ed. 511 (1956), quoting Boyd v. United States, 116 U.S. 616, 634, 6 S. Ct. 524, 29 L.Ed. 746 (1886)]. Immunity from the use of compelled testimony and evidence derived directly and indirectly therefrom affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

92 S.Ct. 1661.

■ We hold that the immunity order issued by the district court in the present case was, under *Kastigar*, sufficient to protect Kelly's Fifth Amendment privilege.

■ We emphasize, however, as the Supreme Court did in *Kastigar*, that the Fifth Amendment requires not only that the compelled testimony not be used against the witness but imposes a "total prohibition on use . . . barring

8. The phrase "use immunity" is shorthand used to describe a statute under which the grant of immunity to the witness guarantees only that his testimony (or other information derived from that testimony) will not be used against him in any future criminal prosecution. Use immunity statutes do not, however, prohibit future criminal prosecutions. If independent evidence of guilt is found by the government, the witness can be tried and convicted of the crime about which he was questioned under the grant of immunity. Transactional immunity statutes, on the other hand, grant an absolute immunity from any future prosecution for crimes arising from any transaction about which the witness is questioned and testifies.

United States v. Cropper, 5 Cir. 1971, 454 F.2d 215 [September 16, 1971, on petition for rehearing November 12, 1971].

9. The statute in that case provided that, when a witness is compelled by district court order to testify over a claim of the privilege:

> the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002.

the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosure." 92 S.Ct. 1664.

A person accorded this immunity . . . and subsequently prosecuted, is not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities. As stated in *Murphy* [Murphy v. Waterfront Comm., 378 U.S. 52, 84 S. Ct. 1594, 12 L.Ed.2d 678]:

"Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." 378 U.S., at 79, n. 18 [84 S.Ct. at 1609].

This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

92 S.Ct. 1665.

■ Kelly contended, next, that the immunity order, even if use immunity is constitutionally acceptable, was insufficient to protect his Fifth Amendment privilege against self-incrimination in that it did not even provide for use immunity. He argued that the Government may not, even under a grant of use immunity, compel a witness to testify about acts which led to a substantive conviction which is on appeal at the time the witness is compelled to testify. Kelly contended that in effect he would be forced to aid the prosecution in preparing its appellate case against him. This, Kelly argued, is what the Fifth Amendment privilege was designed to prevent,

citing Frank v. United States, 1965, 120 U.S.App.D.C. 392, 347 F.2d 486, 491, cert. dismissed 382 U.S. 923, 86 S.Ct. 317, 15 L.Ed.2d 338.

Kelly's argument, and his reliance on Frank v. United States, supra, is precluded by footnote 3 in Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Footnote 3 reads in pertinent part:

We find no merit in the petitioner's further suggestion that his indictment must be dismissed. After his conviction was affirmed by the Court of Appeals, he testified before a federal grand jury concerning the charges involved here. Because he was compelled to testify pursuant to a grant of immunity, 48 Stat. 1096, as amended, 47 U.S.C. § 409(*l*), it is clear that the fruit of his testimony cannot be used against him in any future trial. But the petitioner asks for more. He contends that his conviction must be vacated and the charges against him dismissed lest he be "subjected to [a] penalty . . . on account of [a] . . . matter . . . concerning which he [was] compelled . . . to testify . . . ." 47 U.S.C. § 409(*l*). Frank v. United States, [120 U.S.App. D.C. 392], 347 F.2d 486. We disagree. In relevant part, § 409(*l*) substantially repeats the language of the Compulsory Testimony Act of 1893, 27 Stat. 443, 49 U.S.C. § 46, which was Congress' response to this Court's statement that an immunity statute can supplant the Fifth Amendment privilege against self-incrimination only if it affords adequate protection from future prosecution or conviction. Counselman v. Hitchcock, 142 U.S. 547, 585–586, 12 S.Ct. 195 [206–207], 35 L.Ed. 1110, 1121, 1122. The statutory provision here involved was designed to provide such protection, see Brown v. United States, 359 U.S. 41, 45–46, 79 S.Ct. 539 [543–544], 3 L.Ed. 2d 609, 613, 614, not to confer immunity from punishment pursuant to a prior prosecution and adjudication of guilt. Cf. Reina v. United States, 364

U.S. 507, 513–514, 81 S.Ct. 260 [264–265], 5 L.Ed.2d 249, 255.

389 U.S. at 349, 88 S.Ct. at 510.

Footnote 3, when read in the context of this Court's treatment of the *Katz* case, refutes Kelly's contention. After his substantive conviction in California, Katz was subpoenaed to testify before a federal grand jury in the Southern District of Florida. He claimed the privilege against self-incrimination and was granted immunity under 47 U.S.C. § 409(*l*). When Katz refused to answer questions before the grand jury, he was brought before the district court, where his counsel insisted, relying on Frank v. United States, that Katz was entitled, under the grant of immunity, to an assurance or stipulation by the Government that the Ninth Circuit conviction be vacated and the indictment be dismissed with prejudice. The district judge ruled to the contrary and judged Katz in contempt. On appeal, this Court, to which Frank v. United States was cited and to which arguments identical with those made in the present case were made, denied a motion for a stay. When the grand jury was dissolved, Katz was released and after a new grand jury was impaneled, he was again summoned to appear. This time, he appeared and testified under the previous grant of immunity. On appeal from the substantive conviction to the United States Supreme Court, Katz again relied on Frank v. United States. The Supreme Court answered with footnote 3. *See also* Federal Trade Commission v. Gladstone, 5 Cir. 1971, 450 F.2d 913.

Because our decision relies upon a Supreme Court decision at odds with the previous law of this Circuit, we suggest to the district court that it consider giving Kelly an opportunity to purge himself of contempt by answering the Government's questions before the grand jury.

The Court's order in this cause dated February 3, 1972, is vacated. The Appeal is dismissed and the district court's order of January 3, 1972, reinstated.