UNITED STATES

v.

Gerald D. TAGERT, Jr., 551 17 4003,
Sergeant (E–5), U.S. Marine Corps.

NMCM 80 2771.

U. S. Navy-Marine Corps Court of
Military Review.

Sentence Adjudged 7 May 1980.

Decided 18 May 1981.

LCDR Patrick A. Fayle, JAGC, USN, Appellate Defense Counsel.

LT William C. Martucci, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and SANDERS and BOHLEN, JJ.

CEDARBURG, Chief Judge:

Appellant pleaded guilty to charges and specifications alleging that he conspired with another Marine to commit larceny of United States property valued in excess of $100.00 located in a government warehouse in Naples, Italy, a violation of Article 81, 10 U.S.C.A. § 881, Uniform Code of Military

Justice (UCMJ); that he violated a lawful order issued by Naval Support Activity, Naples, Italy, when he on two occasions sold tax-free stolen items taken from a government warehouse to Italian citizens not entitled to purchase tax-free items, a violation of Article 92, 10 U.S.C.A. § 892, UCMJ; that he wrongfully sold military property of the United States, having a value of $9526.60, to Italian nationals, a violation of Article 108, 10 U.S.C.A. § 908, UCMJ; that he stole United States government property having a value of $9526.60, a violation of Article 121, 10 U.S.C.A. § 921, UCMJ; and that he unlawfully entered a United States government warehouse with the intent to commit larceny, in violation of Article 130, 10 U.S.C.A. § 930, UCMJ. After properly advising appellant of his rights and inquiring into the circumstances surrounding the alleged offenses, the military judge found appellant's pleas to be provident and thus found appellant guilty as he had pleaded. Sentencing was by officer and enlisted members sitting as a special court-martial; the members sentenced appellant to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $299.00 pay per month for a period of 6 months, and reduction to pay grade E–1. Pursuant to a pretrial agreement, the convening authority approved the sentence but suspended for 12 months from the date of trial that portion of the confinement at hard labor in excess of 120 days. The supervisory authority approved the sentence.

Ten assignments of error have been submitted by appellate defense counsel for our consideration; only two issues warrant extended discussion. We specifically note our conclusion that the sentence is not inappropriately severe, even considering the extenuation and mitigation presented, given the nature of the offenses as well as the evidence in aggravation.

Asserting that one of the enlisted members of appellant's court-martial was from the same unit as appellant, appellate defense counsel, echoing trial defense counsel's argument submitted in a "post-trial statement" as well as his reply to the staff judge advocate's review pursuant to *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), submits that the court-martial lacked jurisdiction to try appellant. Appellant maintains that Master Sergeant C was statutorily barred from serving on this court-martial inasmuch as both he and MSGT C were maintained on the same unit personnel diary. Article 25(c)(1), 10 U.S.C.A. § 825(c)(1) UCMJ; *United States v. Cook*, 16 C.M.R. 404 (N.B.R.1954). *See also* paragraph 4*b*, *Manual for Courts-Martial, 1969 (Rev.)* (MCM). The failure of trial defense counsel to object or challenge MSGT C cannot be said to waive the error, appellant argues, because the error is jurisdictional in nature; for this he cites paragraphs 68*b* and 215*a*, MCM, as well as paragraph 62*c*, MCM, which he reads to state that "a statutorily ineligible member shall be excused 'forthwith' even in the absence of a challenge."

The government argues that although the two Marines were part of the same unit for "administrative purposes", as "a legal and practical matter" the two were separate in the sense of Article 25(c)(1), UCMJ. Citing a passage in *United States v. Scott*, 25 C.M.R. 636, 640 (A.B.R.1957), a case involving an accused and an enlisted member who were both found to be from the same unit, the government submits that:

The eligibility criteria governing the appointment of enlisted members of courts-martial seems obviously designed to insure the selection of individuals who are free from bias or prejudice arising from a previous close association with the accused, or from a possible mental identification with the supposed interests of his unit in disposition of the case. The word "eligible" as used in the first sentence of Article 25(c)(1) appears to have the same contextual meaning as the identical word appearing in the last sentence of Articles 25(d)(2) and 26(a). The enlisted man, law officer or other court member who becomes ineligible to act under any of the cited statutory provisions, is barred from participation in a particular case because of a personal disqualification with respect to it, and not because he is incompetent

by reason of status or lack of professional qualification for appointment to all courts-martial.

From this the government contends that "it is necessary to examine the factual reality in determining the legal issue of whether MSGT C was a member of the same unit as the accused. Article 25(c)(1), UCMJ;" they thus maintain that factually MSGT C's only connection with the unit to which appellant was attached was for administrative purposes. The government then opines that in any case no objection or challenge was made at trial by defense counsel after a full discussion of the issue and therefore a waiver lies to preclude appellate review of the question.

MSGT C's status was brought to the attention of the military judge by the trial counsel:

TC: I'd like to discuss at this time the fact that one of the members that's on the convening order is nominally attached to the Marine Barracks and it would be an appropriate time to bring it up.

MJ: Are you referring to Master Sergeant [C]?

TC: I am, Your Honor.

MJ: Where is he attached for duty?

TC: He is attached for service record book purposes and for the purposes of getting his checks to the Marine Barracks, Naval Support Activity, Naples, although his report of evaluation and fitness reports are written there, he works for a separate command, in fact, the Naval Support Activity for COMFAIRMED, I believe, in a separate building. He never sees and otherwise never goes into the Marine Barracks except for administrative purposes. He sort of is in a dual status, if you will. The Manual talks about the fact that only certain people, if the accused requests enlisted persons, only certain enlisted members are eligible and one of those would be in paragraph or article 25, must be from a separate unit. In this case, Master Sergeant [C]'s unit—it's rather vague, he doesn't work for operationally or in any other way, for the Marine Barracks. He's not under

control of the Marine Barracks except that they hold his service record book. At least, it seems to me that the spirit of article 25 seems to be satisfied by their separateness; however, this issue with the defense, I believe they have comments also.

MJ: Lieutenant [H]?

DC: Your Honor, as far as the defense is concerned, Master Sergeant [C] is of a different unit. We realize that administratively he may of had some dealing with the Barracks, but operationally, he has no contact with the Barracks. He doesn't have any contact with Sergeant Tagert or in any of Sergeant Tagert's duties over there. Sergeant Tagert may have met him once or twice on the base, but as far as operational is concerned, it's a separate unit. He doesn't have any contact with any people in the Barracks with regard to their duties in any way. We don't feel that the administrative attachment that he has with the Barracks just for record keeping purposes and receiving his check should in any way disqualify him as a member.

MJ: Is his permanent duty station Commander Fleet Air Mediterranean?

TC: He works, I can't say his permanent duty station, it's what the Marine Barracks put down, the Marine Barracks, operationally, functionally, otherwise he's attached to the Navy for duty. In fact he serves with one of the other members, Captain [B], I believe. He works directly for him. To answer Your Honor's question, he appears to be attached, he's stationed at Marine Barracks, but I think in the Code sense, no, in the sense that the Code seems to want, it doesn't seem to want enlisted members from the accused's unit as they define it, sitting on his court-martial panel for the purpose of the Code, Your Honor. It is the government's position that he does not serve at the Marine barracks.

MJ: It would appear that we would have to voir dire him, and get some answers from him as to where he feels he's attached to permanently. Until we've done

that, I'll certainly leave him on as a member.

(R. 25). MSGT C's status was the first matter addressed during *voir dire*:

MJ: Now to begin with, this morning we had some controversy as to what unit you belong to Master Sergeant [C].

MEMBER (MSGT [C]): Well I work for COMFAIRMED. I'm attached to the Marine Barracks for record purposes.

MJ: The Manual says that if you are attached to the same unit of the accused, you may not sit as a member of the jury. Do you consider yourself to be permanently attached for duty at the Marine Barracks, Naples, Italy?

MEMBER (MSGT [C]): No, I don't. The only thing I have to do with the Barracks is quarterly PFT and picking up my pay check.

MJ: Is that true of all Marine members in the Naples area that are attached there for administrative purposes as far as you know?

MEMBER (SGT [C]): As far as I know except for the people that are attached to the Barracks itself.

MJ: Lieutenant Colonel [H], perhaps you could advise us?

MEMBER (LTCOL [H]): Yes, sir, for administrative purposes and record keeping administrative matters we are all attached to the Marine Barracks, but it is far from a permanent duty station. In other words, even the NATO assigned Marines are attached to the Barracks for administrative purposes.

MJ: Master Sergeant [C], who writes your performance evaluations?

MEMBER (MSGT [C]): Who writes it, sir?

MJ: Yes.

MEMBER (MSGT [C]): Captain [B] or Captain [Br]. Captain [B] screens it.

MJ: And Captain [Br], where are you attached for duty?

MEMBER (CAPT [Br]): I am the Marine Liaison Officer for COMFAIRMED and for pay and record purposes, I am attached to the Marine Barracks, Naples.

MJ: For example, your report of fitness would be signed, I presume, by someone from COMFAIRMED organization and not be Lieutenant Colonel [F]?

MEMBER (CAPT [Br]): That is correct, my performance evaluation is written and signed by Admiral [C].

MJ: Do either counsel want to direct any questions to Master Sergeant [C] as to his place of duty?

DC: Your Honor, I don't think it will be necessary, according to your questions he is qualified to sit on the court.

TC: We don't, Your Honor.

MJ: Thank you.

(R. 34–35). MSGT C was thereafter not challenged for cause or otherwise and sat on the court.

Article 25(c)(1) states, in pertinent part, that "[a]ny enlisted member of an armed force on active duty who is not a member of the same unit as the accused *is eligible* to serve on general and special courts-martial for the trial of any enlisted member of an armed force who may lawfully be brought before such courts for trial...." (Emphasis supplied). As noted by the Army Board of Review in *United States v. Scott, supra,* the qualification of enlisted members of an armed force to sit on a court-martial is couched in the same terms as the disqualification of those not licensed to serve, pursuant to Article 25(d)(2), UCMJ: "No member of an armed force *is eligible* to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case." (Emphasis supplied). Given this parallelism, the Army Board of Review went on to explain:

It appears that where a person otherwise eligible to serve on a general court is disqualified under Articles 25(d)(2) or 26(a) because of his current or prior connection with the case at bar, his participation in the trial, while error, will not necessarily deprive the court of its jurisdiction. Such qualification may be waived if the record reflects an "intelligent and conscious waiver" by the ac-

cused, on a theory analogous to the rule in civil jurisdictions that failure to object to a disqualified juror until after verdict, waives the disqualification.[11]

[11] *United States v. Wilson* (No. 8989), 7 U.S. C.M.A. 656, 23 C.M.R. 120; *United States v. Beer* (No. 6537), 6 U.S.C.M.A. 180, 19 C.M.R. 306; *United States v. Glaze* (No. 2078), 11 C.M.R. 168; Cf. *United States v. Moore* (No. 4543), 4 U.S.C.M.A. 675, 16 C.M.R. 249.

Only if there is no effective waiver of such a disqualification, as when it appears for the first time after the trial is finished, is it considered jurisdictional in that it has deprived the accused of a trial before a properly constituted court. If such a disqualification arises during the trial, after findings and before sentence, and is not waived, it merely deprives the court-martial of jurisdiction to continue with the trial until the court is properly re-constituted.[12] In other words, it is not the type of jurisdictional defect that is incurable by waiver such as, for example, the erroneous appointment of a member who had no military status, or of a law officer or counsel who lacked the professional requirements called for by Articles 26(a) and 27(b) respectively.[13] Participation in the trial by such an incompetent member, or counsel, would in all probability deprive the court-martial of jurisdiction to act at any stage of the trial, and we doubt that such a defect could be cured by waiver or consent.[14]

[12] See cases cited in Footnote 11. Cf. NCM 329, Cook, 16 C.M.R. 404.

[13] *McClaughry v. Deming*, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049, ACM S–2019; *Lamar*, 2 C.M.R. 731, involving unqualified Defense Counsel appointed to a SCM in violation of Article 27(c), USMJ [sic]. Also see Winthrop, Military Law and Precedents, 2nd Ed. 71, 73, regarding eligibility of "acting" officers; and of regulars in cases involving volunteers, militia under Article of War 77 (1874).

[14] *McClaughry v. Deming*, supra; *McRae v. Henkes*, 273 F. 108 (CCA, 8th C, Kan. 1921).

In this case, there was clearly an intelligent and conscious waiver by both parties of the disqualification of the two enlisted members assigned to the 15th Administration Company. The Government cannot complain as the convening authority appointed them with full knowledge of the circumstances. That they were assigned to the same company as the accused is fully disclosed by the very order that appointed them to the court, a matter that could not have escaped the attention of the accused who saw fit to forego objection or challenge.

We, therefore, conclude that the court had jurisdiction to hear and decide the case.

*United States v. Scott, supra* at 640–41.

■ We believe the approach the Army Board took in *Scott* to be the correct method of analysis to be applied in a case such as the one before us, the prior decision in *United States v. Cook*, 16 C.M.R. 404 (N.B. R.1954), notwithstanding. That Article 25 should be "strictly construed," *United States v. Bland*, 6 M.J. 565, 567 (N.C.M.R. 1978), does not mean it should be construed to the exclusion of any legally proper and necessary exceptions or in such a manner that mere form prevails over substance; in this case, for example, the spirit as well as the intent of Article 25(c)(1), UCMJ, appear to have been met in the assignment of MSGT C to the court, inasmuch as his connection with appellant is but the most tenuous of administrative links. We need not decide this assignment of error on this basis, however, and will not do so, inasmuch as we believe that by his failure to object, indeed by his completely open acceptance of MSGT C on his court, appellant intelligently and consciously waived any later objection to the composition of the court in this regard. *United States v. Scott, supra.*

We are convinced that MSGT C's disqualification in this case is no more nor less egregious than that of member's status as a witness for the prosecution, *United States v. Beer*, 6 U.S.C.M.A. 180, 19 C.M.R. 306 (1955), that of a member's prior participation in the case as an investigating officer, *United States v. Dyche*, 8 U.S.C.M.A. 430, 24 C.M.R. 240 (1957), that of a member's prior participation in the case as a defense counsel, *United States v. Hurt*, 8 U.S.C. M.A. 224, 24 C.M.R. 34 (1957), or that of a member who had acted as convening authority in the case with regard to a pretrial

agreement, *United States v. Miller*, 3 M.J. 326 (C.M.A.1977), given the enthusiastic welcome onto the panel afforded MSGT C by trial defense counsel. *See generally* 47 Am.Jur.2d, *Jury* § 217. Although we do not fully embrace a position, in regard to Article 25(c)(1), that Article 25 generally "does not differentiate the separate grounds of disqualification in any way" or that "each of the enumerated grounds of disqualification is governed by the same rules," *United States v. Hurt, supra* at 225, 24 C.M.R. at 35, we do believe that a parallel analysis permits us to find that the demands of military due process were met in this case when the issue of MSGT C's eligibility to serve on the court was raised and discussed in appellant's presence and when based on all the information available trial defense counsel posed no objections to MSGT C's retention on the court.

In the present posture of this case, then, we see no jurisdictional defect. *United States v. Scott, supra. Cf. United States v. Cook, supra.* In this regard the case before us is more akin to that reported in *Kohl v. Lehlback*, 160 U.S. 293, 16 S.Ct. 304, 40 L.Ed. 432 (1895) (non-resident juror's status did not render jury illegal or deprive it of jurisdiction), than that in *McClaughry v. Deming*, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902) (court-martial trying officer in Regular Army composed completely of Reserve officers, in direct contravention to statute then in effect), because in *Kohl* "the court was legal, had jurisdiction over the subject-matter and over the person, and the sitting of one disqualified juror being a cause of personal challenge is waived by the failure to interpose it," *McClaughry v. Deming*, 186 U.S. at 66, 22 S.Ct. at 793, while in *McClaughry* itself the "whole court [was] . . . constituted in utter violation of the command of the statute." *Id.* We certainly see no command in paragraph 62*c*, MCM, that once MSGT C's status was disclosed he should have been "excused forthwith"—in the first place, once the status was disclosed not even the trial defense counsel perceived any statutory disqualification which would give rise to a challenge for cause; in the second place, paragraph

62*c* states a mere procedural rule, and does not purport to define a jurisdictional defect.

As did the Court of Military Appeals in *United States v. Beer, supra* at 184, 19 CMR at 310, therefore, we believe appellant's "conscious waiver lifted the cloak of ineligibility" from MSGT C. "[W]hen qualified counsel take a calculated risk, they cannot be relieved of the consequences merely because the right may be fundamental." *Id.* at 185, 19 C.M.R. at 311. Most important, however, "[w]hile we do not recommend to [military judges] that they accept waivers of substantial rights which are granted by the Code, we do not propose to support a rule which would permit defending counsel to induce error and then seek to take advantage of it on appeal." *Id. See generally* ABA Standards on the Defense Function.

Appellant, in his fourth assignment of error, submits that the charges against him should be dismissed. He argues that the transactional immunity given him 12 days after his conviction in return for his future testimony against the co-actor and principal offender in the same crimes of which he stands convicted nullified the conviction, given the terms of the grant read in conjunction with the language of § 0112, *Manual of the Judge Advocate General.* The government counters by emphasizing the staff judge advocate's explanation found in his review, in which the staff judge advocate notes that the grant of immunity was intended to apply only prospectively. The government maintains that the language of the grant, silent as it is on the question of appellant's recent conviction, is indicative of such an intent by the granting authority, since "if the effect of the grant were to nullify the preceding court-martial results, then the condition would have been specifically and emphatically contained in the agreement."

We believe that, both as a matter of fact and of law, the grant of immunity was intended to apply prospectively only.

The trial was completed on 7 May 1980; on 19 May 1980 the following grant of immunity was issued to appellant:

| | |
|---|---|
| IN THE MATTER OF | ) |
| | ) |
| UNITED STATES | ) GRANT OF IMMUNITY |
| | ) |
| V. | ) |
| | ) |
| MARK S. [V] | ) 19 May 1980 |
| CORPORAL | ) |
| UNITED STATES MARINE | ) |
| CORPS | ) |
| | ) |

To: Sergeant Gerald D. Tagert, Jr., USMC

1. It appears that you are a material witness for the government in the matter of CPL Mark S. [V], USMC, and his breaking into the B–6 Warehouse at Capodichino Airport, Naples, Italy, his theft of numerous items from this warehouse, his sale of these items to Italian nationals in violation of a Navy instruction and in his wrongful disposition of the items. It appears further that you conspired with the said CPL [V] with regard to some of the foregoing matters. The time of the events is on or about the Spring of 1979 for one break-in and theft and on or about March 1980, for the remaining break-ins, thefts and wrongful dispositions.

2. In consideration of your testimony as a witness for the government in the foregoing matter, you are hereby granted immunity from prosecution for any offense or offenses arising out of the matters therein concerning which you may be required to testify under oath. You are, of course, not protected from a prosecution for perjury, giving a false statement, or otherwise failing to comply with an order to testify in this matter.

3. It is understood that this grant of immunity from prosecution is effective only upon the condition that you actually testify as a witness for the government. It is further understood that this grant of immunity extends only to the offenses in which you were implicated in the matter herein set forth and concerning which you testify under oath.

---

P. D. [T]
Rear Admiral, U.S. Navy
Commander, Submarine
Group Eight

In his "post-trial statement," dated 20 June 1980, trial defense counsel believed the following issue was "worthy of consideration on review:"

All of the charges against SGT Tagert should be dismissed because subsequent to trial he was given a full and complete transactional grant of immunity. On 19 May 1980 SGT Tagert was given this grant of immunity in return for his testimony against CPL Mark S. [V], USMC, the co-accused and principal offender in the same crimes that SGT Tagert was involved in. A copy of this grant of immunity is attached hereto. It is the defense position that this grant of immunity nulifies [sic] the Special Court-Martial of SGT Tagert. According to the terms of the grant and the language of paragraph 0112 of the Manual of the Judge Advocate General SGT Taggert [sic] can not be prosecuted for these offenses. The JAG Manual distinguishes between "transactional immunity" and "testimonial immunity" as follows:

Transactional immunity, as that term is used in this section, shall mean immunity from prosecution for *any* offense or offenses *to which the compelled testimony relates.* (emphasis added).

Testimonial immunity, as that term is used in this section, shall mean immunity from the *use*, in aid of *future prosecution*, of testimony or other information compelled under an order to testify (or any information directly or indirectly derived from such testimony or other information). (emphasis added).

It is clear from the language of the grant and the JAG Manual that a transactional grant protects the individual from all prosecution that is related to the testimony pursuant to the grant. If the government wants to prosecute an individual and still compell [sic] his testimony then a testimonial grant must be given. On 29 May 1980 SGT Tagert testified for the government at the Article 32 investigation of CPL [V]. This testimony was under oath and as a result his transactional grant is in full force

and effect. For this reason this Court is a nullity and all charges should be dismissed with prejudice to the government. In response, the staff judge advocate noted in his review of 25 August 1980 that:

> In his post trial statement Defense Counsel also maintains that as the accused was granted immunity for further prosecution subsequent to the trial that the conviction was therefore a nullity. Defense Counsel correctly points out the difference between transactional immunity and testimonial immunity. In this case the accused was given a transactional immunity on 19 May 1980, 12 days after his trial in return for his testimony against CPL [V]. I do not agree that giving the accused this immunity voided the court-martial proceedings. Rather, a more correct assessment would be that no further prosecution, in the event the case is reversed on appeal, could be held in view of the type of immunity given to the accused. The error cited by the Defense Counsel is without merit.

Trial defense counsel reiterated his belief that the issue had merit in his *Goode* response.

We can find only two military cases which address similar issues. In *United States v. Vogel*, 18 U.S.C.M.A. 160, 39 C.M.R. 160 (1969), the Court of Military Appeals reversed the Board of Review decision as to sentence for a failure of that Board, during reassessment, to take into account certain instructional errors. Judge Ferguson dissented, being of the opinion that, for other reasons, the findings should be also set aside. He then went on to remark that upon a reversal a rehearing ordinarily would be ordered; however,

> appellate defense counsel has called attention to the fact that the accused, following his conviction, testified against his co-actor. One of the offenses charged against the latter was the same homicide for which the accused was convicted. Since the accused's testimony was given under a grant of immunity, by the convening authority, "from further prosecution for any offense or offenses arising out of the matters therein involved con-

cerning which you may be required to testify under oath," counsel assert that accused cannot be again tried for the instant offense. *United States v. Franks* [sic], 347 F.2d 486 (D.C.Cir.) (1965). The Government did not reply to this assertion.

> Inasmuch as the Government has not been heard on this issue, it is best left for argument at such time as a rehearing, if any, would be held.

*Id.* at 169–70, 39 C.M.R. at 169–70. Although faced with the question, then, the Court avoided the issue of whether a subsequent grant of transactional immunity nullified a prior conviction, and apparently saved to another day a decision on whether the grant of immunity would preclude a rehearing as " 'further prosecution'." It is clear, however, that the Court of Military Appeals did not believe that the language in the grant of immunity, without more, required that Vogel's conviction be set aside as a nullity, notwithstanding the citation to *Frank v. United States*, 347 F.2d 486 (D.C. Cir.1965).

The other military case was decided by the Coast Guard Court of Military Review, *United States v. Barnhardt*, 45 C.M.R. 624 (C.G.C.M.R.1972); appellate defense counsel did assert in that case that the grant of immunity to Barnhardt given between his trial and review actions necessary to finalize the conviction mooted the prior conviction as a matter of law, in light of the *Frank* decision. The immunity granted to Barnhardt provided, as pertinent, that he was " 'hereby granted immunity from further prosecution for any criminal acts connected with ... 2. The criminal acts encompassed in this immunity include any false statement, sworn or unsworn, made prior to the date of this immunity, concerning any matter connected with....' " *Id.* at 627.

The *Barnhardt* court distinguished the case before it from *Frank*, noting that the grant of immunity in *Frank* was directly pursuant to statute whereas Barnhardt's grant was given by a convening authority

taking his power by implications drawn from other regulatory and statutory powers. *See United States v. Kirsch*, 15 U.S.C. M.A. 84, 35 C.M.R. 56 (1964). The *Barnhardt* court then found that the *Frank* decision represented an isolated view, one not followed elsewhere and one in fact criticized by the United States Supreme Court. *See Katz v. United States*, 389 U.S. 347 (1967); *Reina v. United States*, 364 U.S. 507 (1960). The Coast Guard court concluded that

> *Frank v. United States* does not express a view of the law which we reasonably ought to follow. In *Barnhardt's* case it is apparent that, although the convening authority had the power under Article 64 of the Code to exonerate the accused, his letter of immunity did not express any promise to do so; nor has the defense counsel who acted at the trial asserted that there was any bargain, agreement or understanding to reward the accused in return for his testimony by vacating his conviction.
>
> We hold that the law regarding the operative effect of a grant of immunity does not require any such result in the instant case. We find no merit in the suggestion that the findings of guilty and sentence must be set aside. The immunity given Barnhardt was designed to protect him from future prosecution, and in the words of *Katz v. United States*, supra, "not to confer immunity from punishment pursuant to a *prior* prosecution and adjudication of guilt."

*United States v. Barnhardt*, 45 C.M.R. at 628.

The Court of Appeals for the District of Columbia was faced, in *Frank*, with an appellant, Angelone, who was convicted, sentenced and then called to testify before a grand jury. Angelone refused to testify on grounds of self-incrimination; he was then compelled to testify under the immunity statute then in effect, 47 U.S.C. § 409(*1*), which provided, in pertinent part, that:

> no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or

thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that any individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying.

*Frank v. United States*, 347 F.2d at 490. The Court of Appeals went on to say,

> Under this language Angelone may not be "subjected to any penalty * * * for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed this privilege against self-incrimination, to testify * *." Therefore he may not be penalized in the present case since, as we are now advised, his compelled testimony concerned matters related to his conviction which is here on appeal.
>
> . . . .
>
> Compelling one to give testimony which, except for the grant of immunity, is self-incriminating sacrifices the power to penalize the person granted the immunity if he has been convicted with respect to the matters about which the testimony is compelled and his appeal from the conviction is pending when such testimony is given. It probably will not be questioned that should such a conviction be reversed the intervening immunity would preclude a subsequent re-trial. But if the conviction is affirmed, the appellant is "subjected to * * * penalty" not only by the previous conviction but by the subsequent affirmance.
>
> . . . .
>
> To repeat, the Government may not convict a person and then, pending his appeal, compel him to give self-accusatory testimony relating to the matters involved in the conviction. Any other construction of the statute would lead to such potential abuse as to preclude such construction if it may reasonably be avoided consistently with the congressional purpose.

*Id.* at 490–91.

The *Frank* rationale has never gained support in other circuits of the Federal sys-

tem, *see, e. g., United States v. Kelly*, 464 F.2d 709 (10th Cir. 1972); *F. T. C. v. Gladstone*, 450 F.2d 913 (5th Cir. 1971), and now seems to be in disfavor even in the District of Columbia, *see, e. g., In re Liddy*, 506 F.2d 1293 (D.C.Cir.1974). This is in no small part due to the criticism made against the rationale in *Katz v. United States, supra* at 349 n.3, in which the Supreme Court noted:

> We find no merit in the petitioner's further suggestion that his indictment must be dismissed. After his conviction was affirmed by the Court of Appeals, he testified before a federal grand jury concerning the charges involved here. Because he was compelled to testify pursuant to a grant of immunity, 48 Stat. 1096, as amended, 47 U.S.C. § 409(*l*), it is clear that the fruit of his testimony cannot be used against him in any future trial. But the petitioner asks for more. He contends that his conviction must be vacated and the charges against him dismissed lest he be "subjected to [a] penalty * * * on account of [a] * * * matter * * * concerning which he [was] compelled * * * to testify * * *." 47 U.S.C. § 409(*l*). *Frank v. United States*, 120 U.S.App.D.C. 392, 347 F.2d 486. We disagree. In relevant part, § 409(*l*) substantially repeats the language of the Compulsory Testimony Act of 1893, 27 Stat. 443, 49 U.S.C. § 46, which was Congress' response to this Court's statement that an immunity statute can supplant the Fifth Amendment privilege against self-incrimination only if it affords adequate protection from future prosecution or conviction. *Counselman v. Hitchcock*, 142 U.S. 547, 585–586, 12 S.Ct. 195, 206–207, 35 L.Ed. 1110. The statutory provision here involved was designed to provide such protection, see *Brown v. United States*, 359 U.S. 41, 45–46, 79 S.Ct. 539, 543–544, 3 L.Ed.2d 609, not to confer immunity from punishment pursuant to a *prior* prosecution and adjudication of guilt. Cf. *Reina v. United States*, 364 U.S. 507, 513–514, 81 S.Ct. 260, 264–265, 5 L.Ed.2d 249.

The Supreme court had said in *United States v. Reina, supra* at 513, that "the traditional purpose of immunity statutes [is] to protect witnesses only as to the future."

Turning to the case before us, we do not believe as a matter of fact that there was any agreement between the government and appellant to nullify his conviction in return for his testimony at his co-actor's court-martial; no such agreement has been asserted by any party, and by his action approving the findings and sentence the convening authority certainly indicated no such intent or agreement existed. Nor do we find that the Charges must be dismissed or that the conviction of appellant is a nullity as a matter of law. We are not persuaded by the rationale utilized in *Frank v. United States, supra*. We are not faced with a grant of immunity given pursuant to a statute which precludes prosecution or subjecting the individual to a "penalty" once immunity is given, but instead have a regulation which by implication and tradition is deemed to apply in bar of any *future* offense or offenses to which the compelled testimony relates. *See Reina v. United States, supra*. We believe this explains the Court of Military Appeals' failure to address the issue *sua sponte* in *United States v. Vogel, supra*, and is the reason the *Frank* rationale has met with no acceptance throughout the Federal system. It would go against common sense as well as tradition and precedent to find by implication that the general language of appellant's grant of immunity mooted his prior conviction.

■ We therefore hold that the grant of immunity, couched in terms of "immunity from prosecution for any offense or offenses arising out of matters therein concerning which you may be required to testify under oath," was transactional immunity in the traditional sense which protects appellant from future prosecution for offenses about which he testifies pursuant to the grant and which did "not . . . confer immunity from punishment pursuant to a *prior* prosecution and adjudication of guilt." *Katz v. United States, supra; United States v. Barnhardt, supra*. Whether this protects appellant from a rehearing in the event this

conviction is overturned need not detain us, *see United States v. Vogel, supra,* but the staff judge advocate's assessment in this regard would as a matter of fact carry great weight in deciding the intent of the parties concerned.

Accordingly, the findings of guilt and the sentence approved on review below are affirmed.

Judge SANDERS and Judge BOHLEN concur.

## UNITED STATES

### v.